SOPHIA NEESSEN, Administratrix, Appellant, v. ORLAN C. ARMSTRONG, Appellee.

No. 40911.

November 17, 1931.

Willoughby, Strack & Sieverding, for appellant.

Pickett & Swisher, for appellee.

Wagner, J.—At the close of plaintiff's evidence, the defendant moved for a directed verdict on grounds which may be epitomized as follows, to wit: (1) that it has not been shown by the plaintiff's evidence that the decedent was free from contributory negligence; (2) that the evidence fails to show that the defendant was guilty of recklessness within the meaning of the statute; (3) that, under the entire record as made by the

plaintiff's evidence, the court could not allow a verdict in favor of the plaintiff to stand.

Since plaintiff's action is founded upon recklessness, and not upon negligence, contributory negligence by the decedent is not an element to be considered or dealt with at any stage of the case. Therefore, there is no merit in the first ground of appellee's motion for a directed verdict. See Siesseger v. Puth, 213 Iowa 164.

For a proper determination of the remaining grounds of appellee's motion for a directed verdict, we must necessarily refer somewhat in detail to the evidence, which we will now proceed to do. The accident occurred in the town of Grundy Center in the early evening of April 13, 1930. The defendant, at the time in question, was driving a Ford car, the decedent being seated to the right of the defendant. As a result of the accident, the decedent received a laceration across the throat, which cut the jugular vein, and also a puncture of the skull under the ear, and because of his injuries he died the following day. A proper conception of the scene of the accident and the environments can be best obtained by an observation of the accompanying plat, which in enlarged form was introduced in evidence.

Iowa State Highway No. 90, Main Street, and G Avenue are identical, and this highway runs east and west through the

town, as shown by the plat. Fourth Street is a north and south street, which crosses G Avenue, Main Street, or State Highway No. 90, and because of a surveyor's correction line, said street extending south from Main Street lies a little to the west of a continuation of the same street which runs north from Main Street. Fourth Street, running north from Main Street, is also a primary highway, known as No. 14. Both ends of Fourth Street are 24.2 feet wide between the curbs. The width of the intersection lying between the two extensions of Fourth Street is 47.5 feet between the curbs. The witness who made the plat for plaintiff testified that the distance from the west line of Fourth Street running north to the east line of Fourth Street running south is 66 feet. "That 66 feet is a part of the intersection." There is a stop sign on Highway No. 14, or Fourth Street, running north, which is 28.4 feet north of Main Street, or Iowa State Highway No. 90. This stop sign is properly placed on the right-hand side of Highway No. 14 as one approaches Highway No. 90. At the time in question, the defendant came from the north on Fourth Street and entered the intersection to continue his journey on the same street leading south. A Buick Sedan, driven by Leversee, approached the intersection from the west. It appears from the record that the defendant was first within the intersection. Leversee, as a witness, testified that, as he was traveling east on G Avenue (Highway No. 90) and was past the center of Fourth Street (running south), the Ford Runabout (the car driven by the defendant) approached from the northeast and the right front wheel of the Ford hit the left front wheel of his car at an angle of about 45 degrees; that he did not believe that his car moved a foot as the result of the impact, and while there was some damage done to his car, he was in no way injured; that he did not notice where his car was with reference to the sidewalk running north and south on the east side of Fourth Street, and could not tell how much distance there was between the back of his car and the center of Fourth Street extending south from Main Street; that the Ford car was about fifteen or twenty feet distant when he first saw it. He marked a cross on the plat, designated by the letter J, as the spot in the intersection where the left front wheel of his car was at the time of the impact, and a cross designated by the letter O on the plat was marked by him as a witness, as

the location of the defendant's car when he first saw it. He was asked the question as to the speed at which the Ford automobile was travelling and answered: "I couldn't judge the speed." One Alfred Bienfang was operating a filling station at the southwest corner of the intersection between Main Street and Fourth Street, running south, and testified that he saw the defendant's car in Fourth Street coming south; that it did not stop for the stop sign; that he did not notice the speed of the Ford car. Elgin Bienfang resided in a house located in the southeast corner of the intersection of Main Street and Fourth Street, running south. He testified:

"I was in the house putting my boy to bed and was seated at an open window where I could look right up North 4th Street. I saw Armstrong's car as he came down North 4th Street. It did not come to a complete stop before passing the stop sign, or before coming into G Avenue. They were coming south. * * * They just swung to the right and started south again as long as I could see them. * * * As he got to the stop sign, he slowed up, and increased speed after he started again. * * * The last I seen him he was increasing speed. * * * Q. When did you first know that an accident had occurred? A. When I heard the crash. Q. How long after you saw, or after you last saw, the Armstrong car was it before you heard the crash? A. Just about a couple of minutes. Q. A couple of minutes? A. Yes, I heard the crash and got right out there and saw the position that the cars were in right after the accident happened. The point of contact of the two cars was right in line with the sidewalk running north and south on the west side of my house. The Buick car was facing east; the Ford car was facing southwest. * * * Q. And you saw him (Armstrong) from the time that he was the other side of the stop sign until he reached the center of the street? A. Yes, sir. * * * Q. Where was the Armstrong car at the time that it was first turned in the direction where, in which, it was going at the time of the accident? A. In the center of the street. Q. How fast was the Armstrong car traveling at the time of the accident? A. About 20 miles an hour. * * * Q. In what direction was Armstrong looking at the time of the accident? A. He was looking straight ahead. * * * It wasn't dark, I could see a man's eyes across the street."

Another witness testified that the accident happened south of the center of Main Street and east of the center of 4th Street, running south from Main Street.

The foregoing constitutes all of the material testimony upon which we must determine whether it is sufficient to support a verdict of a jury that the defendant's conduct was reckless, within the meaning of the law.

■ It will be noted that, while there is evidence that the defendant slowed down, yet he failed to make a complete stop at the stop sign before entering the intersection. The place in the intersection where the testimony tends to show that the collision occurred, was five or six rods from the stop sign. It is apparent that this failure, if any, on the part of the defendant, was not and could not have been the proximate cause of the collision. Whatever, if any other, infraction of our statutory law may be shown by the testimony, they are such as to make only a prima facie case of negligence against the appellee. Mc-Dougal v. Bormann, 211 Iowa 950; Sergeant v. Challis, 213 Iowa 57; Riepe v. Elting, 89 Iowa 82. Were it not for the fact, as disclosed by the testimony, that the collision occurred south of the center of Main Street, and east of the center of the south extension of Fourth Street, it could hardly be claimed that there is evidence of negligence resulting in the collision. While, if the action were such as could be founded on negligence, the jury might be allowed to find, from the evidence, that the defendant was guilty of negligence,—that is, that he failed to exercise such care as an ordinarily careful and prudent person would have exercised under the same circumstances,—yet that does not solve the problem. This action is founded upon recklessness, which means more than negligence. It means proceeding without heed of or concern for consequences. See Siesseger v. Puth, 213 Iowa 164. In order for conduct to be reckless, within the meaning of the law, it must be such as to manifest a heedless disregard for or indifference to the rights of others. We find nothing in the record hereinbefore set out which evinces a heedless disregard of the rights of Neessen, who was seated by the side of the driver. We do not think that it could reasonably be said from the evidence that the defendant's conduct, though negligent it may have been, was such a heedless disregard of the rights of Neessen as to justify a verdict in favor of the admin-

istratrix. See Silver v. Silver, (Conn.) 143 Atl. 240; Ascher v. Friedman, (Conn.) 147 Atl. 263. The mind is prone to look upon the result, but, unless the acts of the defendant would have been reckless within the meaning of the law without the resulting injury to Neessen, they are not reckless merely because Neessen lost his life. Our statute, Section 5026-b1, Code, 1931, was enacted for the very purpose of preventing recovery by a guest of damages resulting from the negligence of the driver of the automobile. In order for the guest to recover, he must establish one of two things, to wit: intoxication of the driver or reckless operation by him of the automobile. It is quite clear to us that the plaintiff has not made out a case, unless it be that the right of action by a guest to recover damages for negligence has been revived by Section 5028, Code, 1931, enacted by the 43 G. A. as Chapter 128 of the Acts of said General Assembly.

The plaintiff contends that by the provisions of said latter section, the legislature has defined the term ''reckless operation,'' used in Section 5026-b1, Code, 1931, and identical with said numbered section in the Code of 1927. The question at this point is: Did the legislature, by reason of the enactment of Section 5028, Code, 1931, which constitutes a part of Chapter 128, Acts of the 43 G. A., restore the right to a guest to recover damages for negligence,—that is, failure to exercise ordinary care, the same care which an ordinarily careful and prudent person would exercise under the same circumstances? We answer in the negative. Section 5026, Code, 1924, provides:

''In all cases where damage is done by any car driven by any person under fifteen years of age and in all cases where damage is done by the car, driven by consent of the owner, by reason of negligence of the driver, the owner of the car shall be liable for such damage.''

This section was amended by Chapter 119 of the Acts of the 42 G. A. as follows:

''Provided, however, the owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxi-

cating liquor or because of the reckless operation by him of such motor vehicle.''

This amendment now comprises Section 5026-b1, Codes 1927 and 1931. Thus, it is found that the 42 G. A. in plain language asserted that there can be no recovery by a guest for damages, unless the same is caused by the intoxication of the driver ''or because of the reckless operation by him (the driver) of such motor vehicle.''

Section 5028, Code, 1931, provides:

''Any person who drives any motor vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection, or at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving, and upon conviction shall be punished as provided in Section 5089.''

It is this latter section which it is claimed defines ''reckless operation,'' as used in Section 5026-b1, Code, 1927. It will be noted that in Section 5028, Code, 1931, several alternatives are mentioned, and it is added that the offender as to any one ''shall be guilty of reckless driving, and upon conviction shall be punished as provided in Section 5089.'' It will be noted that the words used in Section 5026-b1 are ''reckless operation,'' while in Section 5028 the words used are ''shall be guilty of reckless driving.'' The first alternative in Section 5028 clearly constitutes recklessness as defined by any of the courts. The second alternative, to wit, ''or without due caution and circumspection,'' constitutes no more than negligence; for if one drive a motor vehicle upon a highway without due caution and circumspection,—that is, without such caution and circumspection as an ordinarily careful and prudent person would exercise under the same circumstances,—he is guilty of negligence. Under Section 5026-b1, the guest can recover for ''reckless operation.'' Therefore, if the legislature in Section 5028, Code, 1931, has defined the term ''reckless operation'' as used in Section 5026-b1 so as to include negligence, then the 43 G. A. has nullified what the 42 G. A. did in this respect and has in effect made Section 5026-b1 a dead letter. This could not have been the intention of the subsequent legislation. The title to Chapter 128, Acts of

the 43 G. A., is, "An act to amend Sections 5028 * * * 5021 * * * 5029 of the Code of 1927 * * *." The title in no way refers to Section 5026-b1, Code, 1927, or Chapter 119, Acts of the 42 G. A. The legislation therein enacted provides substitutes for Section 5028 and 5029, Code, 1927, and an amendment to Section 5021, Code, 1927. Said Chapter 128, Acts of the 43 G. A., contains no repealing clause. Therefore, if Section 5026-b1, Code, 1927, has been repealed, in whole *or in part,* by reason of the enactment of the latter legislation, it must be by implication. Repeals by implication are not favored. See Ogilvie v. City of Des Moines, 212 Iowa 117, and cases therein cited. Repeals by implication will not be adjudged if it can reasonably be avoided. See Ogilvie v. City of Des Moines, 212 Iowa 117, and cases therein cited.

It will be noted that Section 5028, Code, 1931, is clearly a criminal statute. We think it quite clear that the words "reckless driving," as therein used, constitute only a name for the offense for a violation of any of the several acts therein designated. All crimes in this state are statutory. In many instances in our criminal code, the act or acts constituting a crime are designated, and the crime named. In many others, the act or acts constituting a crime are designated, the punishment prescribed, and the crime not named. As said by us in State v. Hoaglin, 207 Iowa 745:

"To illustrate, Section 12910 of the Code designates the act and names the crime as murder. In Section 12979 of the Code, after defining the crime, the words used are, 'shall be deemed guilty of sodomy.' In Section 12994, the acts constituting the offense are designated, and said legislative enactment provides: 'He shall be guilty of burglary.' In Section 13005, after naming the acts which constitute the offense, the statutory law provides: 'He is guilty of larceny.' In Section 13038, after providing what constitutes the offense, it is further provided, 'He is guilty of robbery.' Likewise in Sections 13162 and 13165, it being provided in the former section that 'they are guilty of a conspiracy,' and in the latter section, 'He is guilty of perjury.'"

An examination of Sections 12967, 12992, 12993, 12981, 12982, 12969, 12970, and many other sections of the Code will

disclose that certain acts are designated as punishable but no name prescribed for the offense.

An examination of our motor vehicle law discloses that from the very time of its original enactment down to the present time, it provided that every person operating a motor vehicle on the public highways of the state should drive the same in a careful and prudent manner, etc., and further provided that a violation thereof should be punished. To illustrate, Section 5028, Code, 1927, provides that every person operating a motor vehicle on the public highway of this state shall drive the same in a careful and prudent manner, and at a rate of speed that will not endanger the property of another, or the life or limb of any person; and Section 5089 of said Code provides:

"A violation of any provision of this chapter shall be punished by a fine not exceeding $100 or by imprisonment not exceeding thirty days, except in those instances where some other punishment is specifically pointed out."

For similar provisions, see Sections 20 and 23, Chapter 72, Acts of the 34 G. A.; Sections 27 and 29, Chapter 275, Acts 38 G. A.; Sections 5028 and 5089, Code, 1924. In none of these prior enactments was the offense given a name. In the Statute now under consideration, the legislature has merely given the offense a name, and without any intent to define the term "reckless operation" as used in Section 5026-b1, Code, 1927. Any other appropriate name would have served the purpose just as well. We think it quite clear that there was no intent on the part of the legislature by the enactment of Section 5028, Code, 1931, to define the term "reckless operation" as used in Section 5026-b1, or to repeal or modify said section and make it a dead letter. This construction permits both sections to stand and gives both full force and effect in accordance with the manifest intent of the legislature. Therefore, as thus properly construed, the right of a guest to recover damages for negligence of the driver of an automobile has not been restored by reason of the latter enactment. The cause of action of a guest must be founded on intoxication of the driver, or "reckless operation" by the driver, within the meaning of the term "reckless operation" as construed by this court.

The appellee contends that the evidence fails to show

that the decedent was the guest of the defendant. It will be noticed that the statute, Section 5026-b1, Codes 1927 and 1931, provides:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire," etc.

It will also be noted that said amendment, Chapter 119, Acts 42 G. A., is in the nature of a proviso. The record shows that the decedent was riding in the car of the defendant, seated by his side. The evidence fails to show any express invitation or that the decedent's riding was not for hire. There is nothing in the record showing, or tending to show, that the deceased and the defendant were engaged in a common enterprise at the time in question, by reason of which it might be claimed that reckless acts of the one would be imputed to the other; but we reserve pronouncement at this time upon the question as to whether the burden is upon the plaintiff in a case of this kind to prove that the person riding in the car with the defendant was riding by express invitation and not for hire.

For the reasons hereinbefore mentioned, the judgment of the trial court is correct, and the same is hereby affirmed.—Affirmed.

FAVILLE, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.