ETHEL WRIGHT, Appellee, v. WHAT CHEER CLAY PRODUCTS COMPANY and ELVA BROWN, Appellants.

No. 43350.

MAY 12, 1936.

REHEARING DENIED NOVEMBER 19, 1936.

Carl G. Draegert, and F. M. Beatty, for appellee.

McNett, Kuhns & Brown, and Heninger & Heninger, for appellants.

ANDERSON, J.—This action involves a claim for damages for personal injuries resulting from an automobile accident and is based upon what is commonly known as the guest statute, section 5026-b1 of the Code. The statute in question was enacted by

the Forty-second General Assembly and is in the following language:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

Prior to the enactment of this statute, the operator of an automobile was liable to a guest due to the operator's negligence. The quoted section was passed by the legislature for the evident and apparent purpose of relieving the operator of a motorcar from liability for negligence resulting in injury or damages to a guest, and in thus relieving the operator from liability they included in the enactment two exceptions, one taking from the operator the protection of the statute when he is under the influence of intoxicating liquor, and the other when he is guilty of reckless operation. In other words, the operator of a motor vehicle is by the statute relieved from liability to a guest entirely, unless such operator is under the influence of liquor or is operating the vehicle in a reckless manner.

The plaintiff in the instant case claims under the second or last exception to the general rule; that is, her claim is that by reason of the reckless operation of the car in which she was riding as a guest an accident occurred and she suffered injury and damages.

The case was tried to a jury, and after motions for a directed verdict and to strike and withdraw from the jury the allegations of recklessness, as contained in plaintiff's petition, the case was submitted to the jury, which returned a verdict for the plaintiff in the sum of $4,875. Motions to set aside the verdict, for a new trial, and exceptions to instructions were later overruled by the court. The defendants appeal.

Appellants assign many errors, including errors of the court in the admission and exclusion of evidence, in its instructions to the jury, in its refusal to give requested instructions, in its refusal to withdraw allegations of recklessness, in its refusal to direct a verdict for the defendants, and in its refusal to set aside the verdict and grant a new trial; but in the last analysis all questions presented resolve themselves into one, and that is:

Was there sufficient evidence to warrant the submission to the jury of the question whether the car was being recklessly operated at the time of the accident? And if this question is answered in the negative it will not be necessary to notice errors assigned other than those pertinent to the main and vital question as above stated. We might say in passing, however, that the rulings of the court in the exclusion of certain testimony and in the undue restriction of cross-examination cannot be approved, and the same is true as to the instructions of the court; but as a reversal must result from our answer to the main question, a discussion of other alleged errors will be omitted.

The question as to whether or not a case of "recklessness" is made in the record necessarily rests in great part upon the facts as disclosed by the record. We will now recite and discuss the facts.

The plaintiff and the defendant Elva Brown were about the same age, married, and living in What Cheer, Iowa. They had known each other and had been very intimate friends for twelve years. They were both experienced automobile drivers and had both driven over the highway, where this accident happened, many times. On March 30, 1933, about one o'clock in the afternoon, Mrs. Wright, the plaintiff, with her little daughter, accompanied Mrs. Brown on a trip to Oskaloosa. Mrs. Brown was driving a Buick coupé which was owned by her codefendant, the What Cheer Clay Products Company. She had received permission to drive the car from her father, a Mr. Nelson, who was manager of the Clay Products Company. In making this trip they went south from What Cheer about five miles on a gravel road to primary highway No. 2, which is paved 18 feet wide and extends from Oskaloosa to Sigourney. They then proceeded west on highway No. 2 to Oskaloosa, about fifteen miles. It had been raining prior to the day in question, but when the party started to Oskaloosa the sun was shining and there was no rain. They remained in Oskaloosa until about 4:30 in the afternoon, when they proceeded toward home over the route indicated. At this time it had commenced to rain, and there was rain falling from the time they left Oskaloosa until about the time of or shortly after the accident. The accident in question happened after they had traveled about fourteen miles east on highway No. 2. In the vicinity of the accident there is a culvert extending under the pavement, and emptying into this on either side of the

pavement are sluiceways for the purpose of permitting the water running down inclines extending both east and west from the culvert to run off from the pavement. The hill or incline extending to the west from this culvert is approximately 700 feet in length and the one extending east from the culvert is approximately 500 feet in length. The pavement, except where the sluiceways were constructed, had the ordinary cement curb, about 3 inches high, on both sides from near the top of the hills both east and west to the culvert. There was a crown in the center of the pavement about one inch high. At the time in question, when the car in which the ladies were riding reached the top of the hill or incline 700 feet west of the culvert, water was running down on either side of the pavement seeking its outlet at the sluiceways at or near the culvert. The car was driven down this incline and just after it had passed over the culvert it got out of control of Mrs. Brown, the driver, either by reason of skidding on some muddy water or silt collected on the right-hand or south side of the pavement at that place, or by reason of a tire on the car becoming deflated. At any rate, the car went out of control of the driver and, after traveling some 150 or 200 feet in a diagonal course northeast across the pavement, went headon into a ditch 2 or 3 feet deep and against a bank on the opposite side and resulted in seriously injuring Mrs. Wright, the plaintiff, and also injuring and severely shocking the driver, Mrs. Brown. The evidence shows that the Buick coupe was in good repair and operating condition; that the tires were not old and were all perfectly inflated; and that the windshield wiper in front of the driver was operating. It also appears that the muddy water on the sides of the pavement at and near the place of the accident was observable from near the top of the hill 700 feet west of the place of the accident, but there was nothing appearing inherently dangerous for ordinary automobile travel by reason of this.

With the conditions existing as detailed, the plaintiff, appellee, contends that Mrs. Brown was guilty of recklessness in driving her automobile at an excessive speed and in failing to have her automobile under control when approaching the portion of the highway that was slippery and hazardous by reason of the water and silt, and in failing to keep a proper lookout for such dangerous places on the highway, and in failing to stop the automobile after she drove upon the slippery and hazardous

place on the highway. The muddy water or silt extended but a short distance on either side of the pavement and did not cover the center or crown of the pavement; consequently, it could not have been more than an inch or an inch and one-half in depth. The testimony as to excessive speed, under existing conditions, is not at all impressive or convincing. Mrs. Brown's testimony shows that she was driving between thirty-five and forty miles an hour all the way from Oskaloosa to the place of the accident. A written statement signed by the plaintiff, Mrs. Wright, two or three weeks after the accident occurred, also shows that Mrs. Brown was driving between thirty-five and forty miles an hour at and prior to the time of the accident. The truth of this statement is denied by the plaintiff in her oral testimony, and she testified upon the trial that the car was being driven at approximately fifty miles an hour at the time of the accident. She also stated in her written statement that Mrs. Brown was not to blame for the accident and that when the car commenced to swerve Mrs. Brown did everything possible to keep it on the pavement and avoid an accident. There is also testimony of a traveling salesman and his companion to the effect that he was waiting at a small town five or six miles west of the place of the accident to drive on the highway when the Buick coupé drove past at a speed of from fifty to fifty-five miles an hour. These witnesses also testified that they immediately drove onto the highway and followed the defendants' car and arrived at the place of the accident very soon after it occurred, and that they were driving from the point where they entered the highway at thirty-five or forty miles per hour and that the accident happened at least several minutes before they arrived at the place of the accident, and also that they were the first to arrive there except a Mr. Stahl, a farmer, who lived about 700 feet west of the place of the accident and saw the car in the ditch and ran down to the place of the accident. However, there is the testimony, undisputed, of two other men and a boy eleven years old to the effect that they were also waiting in an automobile on a side road to drive onto the highway about two and one-half miles west of the place of the accident when the defendants' car passed them; that the defendants' car was then traveling about thirty-five miles an hour, and that they drove out onto the highway and followed the defendants' car to the place of the accident; that the defendants' car was in plain sight of them all the way

to the accident except at times it would be hidden by curves or by the hills on the highway; that they were driving from thirty-five to thirty-seven miles per hour according to their speedometer which the eleven year old boy riding in the center of the front seat testified he was watching. The car of Elkins, the traveling man, did not pass this second car within the two and one-half miles it traveled on the highway to the place of the accident, and the men in the second car including the boy testified that they arrived at the scene of the accident immediately after it happened and at a time when the farmer, Stahl, was just approaching the scene of the accident from his home. The second car drove out on the side of the road and stopped and all of its occupants got out, and shortly thereafter another car, presumably the Elkins car, drove up and stopped behind them. The boy testifies that he went over and went around the Buick car as it was situated in the ditch and examined it as to the damage it had sustained, and that the left front tire was deflated. All of these witnesses were apparently fair and disinterested, but from an analysis of this testimony we are not at all impressed with the testimony of the man Elkins and his companion. At most, the speed at which the defendants' car was being driven five or six miles from the place of the accident is not at all convincing as to the speed at which it was being driven at the time of the accident, and we are not prepared to say that even if the defendants' car was being driven at a speed of fifty miles an hour at the time of the accident that such speed alone, even under the conditions existing, constituted recklessness.

We have many opinions of this court where the facts were much more favorable to the plaintiff than in the instant case in which we have held that recklessness did not exist.

In Siesseger v. Puth, 213 Iowa 164, 182, 239 N. W. 46, 54, we had a state of facts bordering much nearer on the existence of recklessness than is shown by the present record. In that case the accident happened on a straight, graveled road. The defendant, who was the driver of the automobile, was driving about fifty miles or more an hour, and when he started down an incline about a quarter of a mile before the accident occurred the car began swerving, the driver put his foot on the accelerator instead of the brake, the car increased in speed and continued its swerving until the driver lost complete control, and the car plunged into the ditch. There was a culvert at the bottom of the

incline (as in the present case) and there were slight depressions with loose gravel; there was no obstruction to the view of the highway as you approached the place of the accident. The driver said he hit some loose gravel and the car started to swerve and weave, and instead of slowing down he put his foot on the accelerator and lost control and the car went into the ditch. And this court held that the facts as detailed did not constitute recklessness within the meaning of the statute. Mr. Justice Grimm, who wrote the opinion of the court, reviewed carefully and fully all of the pronouncements of this court as well as those of our sister states bearing upon the statute in question, and other similar enactments in other states. In many of the cases reviewed and quoted from by Justice Grimm, the facts were very similar to the facts and circumstances disclosed by the record in the case at bar, and in that case, after a very careful consideration of the decisions of this and other states, this court adopted the following definition of "recklessness" as used in the statute:

"In light of the circumstances under which said chapter 119 was passed, it is apparent, we think, that the Legislature intended the word 'reckless' therein to mean 'proceeding without heed of or concern for consequences.' To be 'reckless,' one must be more than 'negligent.' Recklessness may include 'willfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless' without being 'willful' or 'wanton,' but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies 'no care, coupled with disregard for consequences.' This necessarily follows in the statute under consideration from the fact that the primary purpose of the statute is to relieve the host from liability for injury to his guest, resulting from negligence. The statute exempts the host from liability for negligence as ordinarily defined, but holds him liable under two specific exceptions."

The rule in the Puth case has many times since the filing of the opinion been before this court and approved. Neessen v. Armstrong, 213 Iowa 378, 239 N. W. 56; Kaplan v. Kaplan, 213 Iowa 646, 239 N. W. 682; Wilde v. Griffel, 214 Iowa 1177, 243 N. W. 159; Levinson v. Hagerman, 214 Iowa 1296, 244 N. W. 307; Koch v. Roehrig, 215 Iowa 43, 244 N. W. 677; Phillips v. Briggs, 215 Iowa 461, 245 N. W. 720; Welch v. Minkel, 215 Iowa 848, 246 N. W. 775; Shenkle v. Mains, 216 Iowa 1324, 247 N. W.

635; Brown v. Martin, 216 Iowa 1272, 248 N. W. 368; Newville v. Weller, 217 Iowa 1144, 251 N. W. 21; Stanbery v. Johnson, 218 Iowa 160, 254 N. W. 303; Petersen v. Detwiller, 218 Iowa 418, 255 N. W. 529.

In cases of this kind the jury should not be permitted to determine whether the defendant did what an ordinarily prudent person would have done under the circumstances, or failed to do what a person of ordinary prudence and care would have done under the same or similar circumstances. It is not sufficient to show negligence, but the plaintiff must go further than this and show a rash, heedless, disregard of danger that would be apparent to or reasonably anticipated by a person exercising ordinary prudence and caution under existing circumstances.

In the case of Newville v. Weller, 217 Iowa 1144, 251 N. W. 21, the facts as disclosed were as follows: The party involved, consisting of five persons, were on their way from Des Moines to Spirit Lake and about twenty miles out of the town of Algona one of the tires gave way and was replaced with a spare tire. As they proceeded, they noticed there was some bumping, but whether this was caused by small humps of asphalt or repairing material or some other cause is not shown. The bumping caused comment, however, and after they had driven about four miles the car was stopped and the owner got out and looked at the tire. There was nothing to indicate any trouble. They proceeded about eight miles further, driving at a speed of fifty-five miles or more per hour, when the tire gave way and the car ran off from the road and seriously injured one of the guests. The action was brought on the theory that the defendant was negligent in permitting the car to be driven at the excessive rate of speed with a patched or repaired spare tire. And on this statement of facts this court reached the conclusion that no recklessness sufficient to warrant the submission of that question to the jury was shown, and that the court properly directed a verdict for the defendant and cites with approval the case of Siesseger v. Puth, supra.

In the case of Stanbery v. Johnson, 218 Iowa 160, 165, 254 N. W. 303, 306, we had a case based upon recklessness. The facts in that case show that the defendant was driving from Mason City to Cresco, with guests, on a graveled highway. The car left the road, went over an embankment, and seriously injured one of the guests. At the place of the accident the road

was rough and "washboardy" and this was perceivable to one approaching from 150 to 200 feet. The car was being driven at about thirty-five miles an hour, and it is conceded was defective in its steering or operating parts. It would shimmy upon the road. This condition was known to the owner of the car but not to the guests. A verdict for the plaintiff was reversed by this court but partly for the reason that the case was submitted to the jury on the theory that the plaintiff was entitled to recover for negligence and also for recklessness. But in commenting upon the facts this court said:

"It is apparent from all our previous holdings that the driving of an automobile while some part thereof is defective is negligence. * * * We have never held, however, nor is there any case called to our attention that holds, that defects in the mechanism of a car, known to the driver, are held to be recklessness. We have effectively disposed of this question in the case of Fleming v. Thornton, 217 Iowa 183, 251 N. W. 158. We have announced the rule in this court that the proof of negligence alone will not support allegations of recklessness; in other words, where the charge is recklessness, it may be established by the proof of negligence, plus other elements which raise it to the dignity of recklessness. This additional proof is wholly wanting in the case before us. The most that can be said of the proof adduced in this case is that it proves negligence and does not prove recklessness."

In the case of Petersen v. Detwiller, 218 Iowa 418, 255 N. W. 529; 96 A. L. R. 1484, we had a case based on recklessness in which the facts disclosed that the defendant was driving an oil truck, with a tank partially filled with oil, down a hill about four miles east of Audubon; that the plaintiff, Petersen, was riding in the cab with the defendant. The highway going down the hill had become cut up by reason of truck traffic thereon and had been recently dragged, partly filling the ruts in some places full and in other places very little. The truck was being driven about thirty-five or forty miles an hour when it came to the top of the hill, and the driver did not experience any difficulty in passing over it until he had got part way down, when a front wheel of the truck hit some silt and the truck began to sway. After swaying from one side of the road to the other for a distance of ten or twelve rods, it finally upset, injuring the boy

guest. The question in that case was, as in the case at bar: Was there sufficient evidence of recklessness to take the case to the jury? In the opinion in that case we reaffirmed the doctrine announced in Siesseger v. Puth, supra, and held that there was not sufficient evidence of recklessness to warrant a submission of the case to the jury.

The case of White v. Center, 218 Iowa 1027, 254 N. W. 90, relied upon by appellee, is not parallel at all as to the facts of the case at bar and does not in any way change the rules previously announced by this court. In that case the facts disclosed that the injured guest was a hitchhiker and had procured a ride with a traveling man on his way to his home in Marshalltown; that the car was being driven from fifty-five to sixty-five miles an hour; and that in broad daylight on a straight highway, where there was nothing to interfere with the view of the driver, the car was driven into a wagonload of corn which was proceeding in the same direction as the defendant's car. In this case we held that there was sufficient evidence of recklessness to warrant the submission of the case to a jury. The driver of the car could have seen the wagonload of corn for at least a quarter of a mile before the accident had he been looking, and under this state of facts we held that if the driver of the car had used any care whatever in keeping a lookout ahead he must have seen the wagon when he was a sufficient distance from it that he could have easily slowed down or turned out, and thus avoided the accident. And we held that if he did not see the wagon he was guilty of recklessness for the reason that he used no care whatever. And in this case we reannounced and reaffirmed the doctrine as established in Siesseger v. Puth, supra.

None of the cases cited by appellee are comparable in their facts with the facts in the case at bar. In most of the cases there was evidence of deliberate, voluntary driving of the car into a dangerous situation when the danger or peril was clearly known to the driver, or should have been discovered in the exercise of ordinary care and prudence. It may be assumed that when the car commenced to skid or swerve in the case at bar the driver, Mrs. Brown, became excited and alarmed, and did not use the best judgment of a highly experienced driver in avoiding the accident; but if the skidding was caused by the muddy water or silt on the side of the pavement which a driver exercising ordinary care and prudence would not anticipate was dan-

gerous, or if it was caused by the deflation of the tire, then the defendant could not be held to be reckless. In order to be reckless in the instant case, the driver must have had knowledge of the hazard or peril, or in the exercise of reasonable and ordinary care she should have acquired such knowledge, and appreciated that hazard and danger existed, but acted in entire disregard of the existing danger, and proceeded without heed of or concern for consequences without any care whatever, then she could be said to be guilty of recklessness, but such is not the record in this case. The evidence as to the deflated tire is convincing. The little boy eleven years old, who out of his youthful curiosity examined the car, testified that the left front tire was deflated. Three other witnesses, garage men and mechanics, who removed the car from the ditch early the next morning, found the tire deflated, and later a large spike was discovered as the cause of the deflation. If the skidding or swerving of the car was caused by the deflated tire, then the driver would not be guilty of recklessness, and it is fair to assume that the deflation of the tire was the cause of the swerving and weaving, and it would not do to permit the jury to speculate on this record as to what was the cause of the accident. There is no evidence of recklessness sufficient to warrant a submission of the case to the jury. Indeed, it would be a serious question, if it were presented here, as to whether or not the record even shows negligence on the part of the driver of the car.

It is our conclusion that the trial court should have sustained defendants' motion for a directed verdict. A reversal necessarily follows.—Reversed.

DONEGAN, C. J., and ALBERT, PARSONS, RICHARDS, STIGER, and KINTZINGER, JJ., concur.

HAMILTON, J., takes no part.