Lois TOMASEK, Appellee, v. HUGH J. LYNCH, Appellant.

No. 46162.

JUNE 15, 1943.

Gibson, Stewart & Garrett, of Des Moines, and Estey & Estey, of West Union, for appellant.

Antes & Antes, of West Union, for appellee.

MANTZ, J.—This is a law action wherein Lois Tomasek seeks to recover for injuries which she claims to have suffered while she was riding as a guest in an automobile owned and operated by Hugh J. Lynch on July 5, 1941. She claims that the injuries which she suffered were brought about by the conduct of the defendant in then operating his automobile in a reckless manner, and that at the time he was in an intoxicated condition.

The defendant denies generally the claim of the plaintiff, admits that at the time and place in question he was operating his automobile and that the plaintiff was a guest therein, but avers that the injuries which plaintiff received were by reason of an unavoidable accident. He specifically denies that he was reckless in the operation of his automobile, or that while doing so he was intoxicated.

At the conclusion of the plaintiff's testimony and after she had rested, the defendant moved for a directed verdict on the ground that plaintiff had failed to substantiate her claim sufficiently to have the matter submitted to the jury. This motion was overruled. When both sides had rested the defendant renewed said motion to direct a verdict. This was overruled. Exceptions were taken to both adverse rulings. The cause was submitted to the jury and with the instructions there were submitted to the jury two special interrogatories requested by the defendant. The first interrogatory asked the jury to state whether the defendant at the time and place of the accident was operating his automobile in a reckless manner, and the second, whether at said time and place the defendant was in an intoxicated condition. The jury, in returning a ver-

dict in favor of the plaintiff, answered the first interrogatory in the affirmative and the second in the negative. Judgment was entered, after which the defendant moved to set the same aside, for judgment notwithstanding the verdict, and to dismiss plaintiff's petition. The motions were overruled and the defendant has appealed to this court.

Appellee brings suit under what is popularly known as the "guest statute," which section is as follows:

"5037.10 Guest statute. The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

Appellant concedes that appellee was a guest in his automobile at the time she received the injuries complained of. The jury having determined that at the time and place of the accident the appellant was not intoxicated, appellee's recovery, if any, must be bottomed upon the other exception set forth in the above-quoted statute—that is, that she was injured by reason of the reckless operation of the automobile then driven by appellant.

The reckless operation with which appellee charges the appellant in her petition is as follows:

"That the defendant was reckless in the operation of his car at the time of the accident in that he was driving his automobile at said time and place at an excessive rate of speed to-wit: in excess of 65 miles per hour; in that he failed to reduce the speed of his said automobile so that he could make a left turn and avoid running off the end of the road and into the ditch; in that in failing to have his said car under control thereby avoiding having the accident."

The burden is upon the appellee to establish such allegation of recklessness and she must do so by the greater weight of the evidence. The court in submitting that issue to the jury must have found that appellee had made a showing sufficient to generate a jury question. In order to pass upon the correctness of

that action of the court it is necessary to review the evidence thereon as shown in the record.

On July 4, 1941, Hugh J. Lynch, appellant, Lois Tomasek, appellee, and John Burke, of Waucoma, Iowa, traveling in the automobile owned by Lynch, started for Oelwein, Iowa, to attend a Fourth of July dance. On their way, at Fairbanks, Iowa, Miss Alice Murphy joined the party. The trip was made by prior arrangement. All were mature persons, and, with the exception of Miss Murphy, had been acquainted for many years. Lynch was twenty-five years old, Burke a year younger, but the ages of the other two members of the party do not appear in the record. Miss Tomasek was a registered nurse and Miss Murphy was a stenographer and worked for the Rath Company at Waterloo. The automobile was in good condition, having been completely overhauled about ten days prior to the accident; the brakes and lights were in good condition and the windshield was clear.

The party arrived at the dance between 9 and 10 in the evening, and remained there until about 12:30 following. Practically all of the time was spent visiting and dancing. They left the dance hall at about 12:30 and stopped for a short time to get some hamburgers, following which they started for Waucoma, stopping at Fairbanks to leave Miss Murphy at her home. Leaving Fairbanks the other members of the party occupied the front seat of the automobile, with Lynch driving and with Miss Tomasek between him and Burke. They drove east on Highway No. 10 and intended to take a road straight north through to the town of Hawkeye and on to Highway No. 18. Lynch was not familiar with the roads and depended upon Burke to direct him as to the highway sought. About five miles east of Fairbanks they came to a road running north and Burke indicated that the same was the road sought as running straight north to Hawkeye. It was surfaced with crushed stone and gravel and was in good condition. A few miles north they came to an east-west highway, No. 93. Lynch says that he looked for traffic from the other directions and seeing none drove ahead at a speed of about thirty-five miles per hour. This crossing was a mile south of where the accident took place. Burke, as a witness for appellee, says that Lynch did not slow up in making the crossing, and

gave it as his opinion that the car was traveling "somewhere around fifty miles an hour."

As the car proceeded north from No. 93 there was nothing unusual in the manner in which appellant was driving. Nothing was said by anyone to the effect that the highway being traveled ended a mile north of No. 93. All members of the party were awake, talking and visiting. Appellant states that he first discovered that the road indicated by Burke was not the one intended when he saw some trees ahead showing up by his lights. The evidence shows that the road upon which they were traveling ended when it intersected an east-west highway, and that to proceed farther the traveler had to turn to the right or to the left. Burke, as a witness, corroborates Lynch in saying that they thought they were on the straight road but were mistaken. The row of trees was from one hundred fifty to two hundred feet north of the east-west highway. Some of the trees were quite large. At the time Lynch discovered that the road ended he was about sixty to seventy feet south of the north edge of the east-west highway. North of the traveled track of this east-west highway is a ditch from six to seven feet deep, and extending to the north fence line, a distance of about twenty feet. Appellant states that as soon as he discovered the end of the road he realized that he would either have to stop the car or make a turn. He decided to try to stop and applied his brakes, but the wheels slid on the crushed rock and gravel and went forward and down into the ditch and over some large rocks therein and came to rest with the left fender against a large corner post about due north of the center line of the north-south highway. Some of the rocks were twenty inches above the surface of the ground. When the car went into the ditch it was going about five miles per hour. It did not upset and came to rest on its tires. The ditch was quite abrupt and as the car went into it the occupants were thrown forward and both Lynch and Miss Tomasek received severe injuries. As the car pitched into the ditch, Lynch, in trying to protect Miss Tomasek, threw his arm in front of her and suffered severe cuts from the broken glass in the windshield. The car was undamaged except the left fender was pushed back by coming into contact with the post. The front axle, the radius rods, and the grill were damaged in passing over the stones. The

radiator and the tires were undamaged. When it stopped, the rear end of the car was about three feet from the north bank of the east-west highway. As soon as he could, the appellant went to a neighboring farmhouse and there sent word to a physician, who later came and treated the injured parties.

The next morning the mechanic who had overhauled the Lynch car went to the scene. The car had not been moved. He observed the damages to the car; also the tire marks. He stated that the skid marks did not turn but went straight ahead and that these skid marks showed that the tires had slid for about twenty feet just south of the east-west highway. The only witnesses to the speed of the car at the time and place were Burke and Lynch. The appellee was in court but did not testify. A physician stated that in his opinion the health and general welfare of appellee would be jeopardized if she testified in the case.

Burke was a witness for appellee. He was not a satisfactory witness and his testimony to a considerable extent lacks probative force. Frequently he resorted to such expressions as, "I won't say; I can't remember; I can't say." Also there is contradiction in his testimony as to what happened at the time of the accident. On direct examination he testified as to what happened, as follows:

"We were going north on the road when we suddenly approached the end of the road and just before the accident happened, Lois Tomasek hollered something as Hugh John [appellant] started to stop or tried to stop and didn't completely stop and went into the ditch on the north side of the east and west road. I don't know what distance from the north bank of the east and west road the car was when the defendant first applied his brakes. I can't explain when and how the car came to a stop or where it came to a stop."

Concerning this same matter, he testified on cross-examination:

"I don't know what happened in the last one hundred feet before the accident occurred. I know Miss Tomasek hollered but I don't know how close we were to the edge then. I don't have any idea how far back it was then."

The witness was asked the following question:

"Q. On this particular occasion, did you observe any sensation of the brakes being suddenly applied or the car suddenly slowing down just before the accident? A. Well, it all happened so quick, I don't know, there were so many sensations experienced at that time that I don't know whether there was a sudden slowing down or not."

This same witness, speaking of the road taken north from No. 10, said:

"We thought we were taking a road that leads directly north to Highway No. 18. I can't say whether I suggested taking this road or not. It was a graveled road and appeared to be in pretty fair shape. It ran substantially level. Our intention was to drive on to Highway No. 18 and we thought this road went right on through to Highway No. 18, but it didn't."

Appellant testified that he was not familiar with the roads and that he depended upon Burke to direct him.

There is nothing in the record showing or tending to show that the parties were on any but the friendliest terms. The evening had been agreeably spent.

The evidence shows that the dance attended was one celebrating the national holiday, and that the party while there took a few drinks consisting of a small quantity of whisky mixed with Coca Cola. This drinking was at least four hours prior to the accident. There was nothing to indicate that any of the party was intoxicated, and no witness testified to that effect. The jury made a specific finding that the driver was not intoxicated at the time and place of the accident. The physician who was called immediately following the accident says that he saw nothing unusual about the appellant other than those conditions arising from his injuries. In spite of the lack of evidence of intoxication and the finding of the jury, appellee has stressed and emphasized that suggestion in her argument in this court. Under the whole record we find nothing to justify such suggestion or inference.

Having in mind the facts as shown by the record, we take up the question as to whether or not they were sufficient to bring

it within the purview of the guest statute. We think the evidence falls short of the showing necessary to make a jury question. To permit the appellee to recover herein she must show something from which recklessness may be fairly and legitimately inferred. It must go beyond a showing of negligence. It must further show a rash, heedless disregard of danger that would be apparent to or reasonably anticipated by a person exercising ordinary care and prudence under the existing circumstances. Wright v. What Cheer Clay Products Co., 221 Iowa 1292, 267 N. W. 92; Newville v. Weller, 217 Iowa 1144, 251 N. W. 21.

It must appear from the evidence that at the time and place of the accident the driver, appellant herein, was proceeding without heed of or concern for consequences, with no care, coupled with a disregard for the safety of his guest, appellee herein. Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46; Neesen v. Armstrong, 213 Iowa 378, 239 N. W. 56; Kaplan v. Kaplan, 213 Iowa 646, 239 N. W. 682; Wilde v. Griffel, 214 Iowa 1177, 243 N. W. 159. Our court has consistently followed the rule laid down in the Siesseger case. An error in judgment, thoughtlessness, or mere inadvertence does not constitute recklessness within the meaning of the statute. Harvey v. Clark, 232 Iowa 729, 6 N. W. 2d 144; Petersen v. Detwiller, 218 Iowa 418, 255 N. W. 529.

In Wilde v. Griffel, supra, the facts were quite similar to those of the present case. There the guest was riding in the front seat with the driver. The car was traveling southward and came to the end of the highway to a "T" intersection and the car did not make a turn but went ahead and into a ditch on the south side of the east-west road. In that case the plaintiff made almost the identical claims of recklessness as are claimed in this case, excessive speed, failure to slow down, failure to have the car under control, failure to keep a lookout for the end or turn of the north-south road. Upon discovery of the end of the road, the evidence failed to show that the driver did anything except to attempt to stop to avoid the accident. A directed verdict in favor of the defendant was made on the grounds that there was no recklessness shown. This court affirmed the lower court. Therein the court cited the rule laid down in the Siesseger v. Puth case.

In this case Miss Tomasek and the driver were sitting side by side and her opportunity to see ahead was equal to his; there was nothing to obstruct the view ahead; there existed nothing to warn or apprise the driver that the road ended right ahead; both the driver and Burke believed that it went straight through to Hawkeye; there was no excessive speed; the weather conditions were normal; they were traveling over a good road, with no other traffic to interfere; the parties were visiting and talking; the automobile was in good condition; there was nothing in the situation to suggest danger ahead. When the lights of the automobile showed a row of trees ahead the driver realized that there had been a mistake as to the road taken. Confronted with such a situation, he realized that he must act at once, either attempt to stop the car or try to make the turn. He might have been able to make the turn. He decided to attempt to stop, and he did the only thing he could to stop and that was to apply the brakes. The skid marks show that he did so. In spite of his efforts to stop, the car slid ahead and into the ditch. In trying to shield the appellee as the car went into the ditch he received a severe arm injury from the glass of the windshield. As soon as he could he hurried to a neighboring farmhouse to summon medical aid.

Certainly the acts and conduct of appellant fall far short of a showing of recklessness under the statute and our decisions. He may have made an error in judgment. He might have been able to take the turn in safety. The record fails to show facts indicating a degree of wantonness, disregard, heedlessness, and lack of care with no concern for the consequences. A fair and candid analysis of the record shows just the opposite. It shows that at all times he acted with concern for the safety of his guests and that he was severely injured in trying to protect the appellee. Appellee's charge of recklessness against the appellant did not have sufficient support in the evidence to warrant the submission of that issue to the jury. The motion to direct a verdict made by appellant at the conclusion of the trial should have been sustained. The judgment of the lower court is reversed.

In view of our holding herein it is unnecessary to pass

upon the motion of appellant to tax to appellee the costs of the amended abstract of appellee.—Reversed.

All JUSTICES concur.