**RUSSELL v. TURNER et al.**

No. 12959.

Circuit Court of Appeals, Eighth Circuit.

April 19, 1945.

Denis M. Kelleher, of Fort Dodge, Iowa (John D. Kelleher, of Fort Dodge, Iowa, on the brief), for appellant.

Floyd E. Page, of Denison, Iowa, and Alan Loth, of Fort Dodge, Iowa, for appellees.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

This controversy grows out of an automobile accident which occurred the night of August 29, 1943, near Pocahontas, Iowa.

Donna Mae Russell (who will be referred to as plaintiff), then fifteen years of age, was a guest passenger in the car involved in the accident. The car belonged to A. H. Turner and was being driven, with his consent, by his sixteen year old son, James Turner. The plaintiff sat beside James in the front seat. Two other young people, also in their teens, sat on the back seat. The car left Pocahontas at eleven o'clock P. M., and just prior to the accident was traveling west on a country road which terminated at its intersection with a road running north and south. James Turner failed to observe that the road upon which he was driving did not extend beyond the intersection, until it was too late to stop or turn. He drove the car straight across the intersection, with its brakes on, into the ditch. The car was wrecked and the plaintiff was badly hurt. She brought this action to recover for her injuries, jurisdiction being based on diversity of citizenship.

A statute of Iowa known as the "Guest Statute," § 5037.10 of the Code of Iowa 1939, relieves the owner or operator of a motor vehicle from liability to a guest passenger for injuries except such as result from the intoxication of the driver or from "reckless operation by him of such motor vehicle."[1]

In her complaint, the plaintiff alleged that her injuries "were caused by the heedless, reckless, wilful and wanton acts of James Turner, the driver of said car, in operating and driving said automobile at dangerous and excessive speed and out of control of the driver, and without any care or concern for consequences." This allegation was denied in the answer. The issues were tried to a jury. At the close of the evidence, the court, on motion of the defendants, directed a verdict for them on the ground that the evidence was insufficient to support a finding of "reckless operation". The plaintiff has appealed, contending that the court erred in refusing to submit the case to the jury.

The trial judge has stated the facts in detail and has made an admirable and painstaking analysis of the pertinent Iowa law. See D.C., 56 F.Supp. 455. In sub-

---

1 "§ 5037.10 *Guest statute.* The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

stance, his opinion is that a driver may not be adjudged guilty of "reckless operation" of an automobile, under the Iowa Guest Statute, unless the evidence will sustain a finding that he was aware of the danger confronting him and proceeded in disregard of it and without care or concern for consequences.

The question which this court must decide is whether the trial court reached a permissible conclusion in determining that, under Iowa law, the plaintiff had not made out a case.

■■ The considered opinion of a trial judge as to a question of local law may properly be accorded great weight by this court. It will not adopt a view contrary to that of the trial judge unless convinced of error. Magill v. Travelers Ins. Co., 8 Cir., 133 F.2d 709, 713; Roth v. Swanson, 8 Cir., 145 F.2d 262, 266, 268; Doering v. Buechler, 8 Cir., 146 F.2d 784, 788; Railway Mail Ass'n v. Chamberlin, 8 Cir., 148 F.2d 206. This does not mean that an appellant, in order to obtain a reversal of a judgment in a case such as this, must demonstrate error to a mathematical certainty, but it does mean that this court will not overrule a decision of a trial judge upon a question of state law except for cogent and convincing reasons. Compare Yoder v. Nu-Enamel Corporation, 8 Cir., 145 F.2d 420, 423–425; Roth v. Swanson, supra, page 269 of 145 F.2d; Anderson v. Sanderson & Porter, 8 Cir., 146 F.2d 58, 62. All that this court reasonably can be expected to do in reviewing cases governed by state law is to see that the determination of the trial court is not induced by a clear misconception or misapplication of the law.

The factual situation disclosed by the plaintiff's evidence is, in substance, as follows: On the evening of the accident, James Turner called for the plaintiff, who was visiting her grandparents in Pocahontas. He had invited her to accompany him, Alfred Viktor and Mary Ang Lorge to Rolfe, Iowa, which is about ten miles from Pocahontas. The purpose of the trip to Rolfe was to see a show. Alfred Viktor drove the car to Rolfe. The show was over about 9:30 P. M. They then returned to the car. James Turner took the wheel and the plaintiff sat beside him. Alfred Viktor and Mary Ang were in the back seat. They "drove around at Rolfe on the outskirts where a road goes over the railroad track and makes a sharp turn, and Jim [James Turner] said he knew of a road like that near Pocahontas. He said he would like to show it to us sometime." They loitered on the way back to Pocahontas, and finally had some food in the Pine Room in the hotel there. They then went back to the car, and "they [some one other than the plaintiff] said 'Well let's go out to the road'". It was then eleven o'clock. James drove. The plaintiff was in the front seat with him, and the others were in the back seat. They went one mile west of town and then turned south. "Alfred Viktor said, 'Jim, are you sure this road will get us there,' and Jim said, 'Yes, it will.'" After going south one mile, the car was turned west again upon a graveled road. The gravel extended for about four miles, and at the end of four miles the road was not good. "It was a dirt road with just a slight bit of gravel over it. It was not as wide as the graveled road." "It was what you might call rolly. It had little hills in it, you might say." As the car approached some trees [about 900 feet from the place of the accident], it was "what you might call really speeding". The plaintiff and Mary Ang asked James to slow down. Viktor said, "Yes, you better slow down." James said, "I don't care; I'm mad." This happened about as they reached the trees, where the road (or probably the traveled track) curved slightly to the right. The plaintiff was sitting sideways in the front seat so that she could see both the driver and those in the back seat. She was away from the door. As the car took the curve near the trees, she was pushed against the door. "* * * then I [the plaintiff] was pushed this way again so I got sort of a jolt, you might say. * * * Then we went over a knoll [about half-way between the trees and the place of the accident], and if you have ever ridden on a roller coaster you know how you sort of leave your seat. That is what happened to me; I stayed there; just as if the car was going ahead without me. Then I was sort of thrown, you might say, like this, so my position was more forward (indicating)." She felt the car swerve in the road. The speedometer, as they passed the trees, registered 75 miles an hour; it decreased to 65 miles an hour. The car went over the knoll, and, after reaching the intersection and crossing it, went off the road. The plaintiff had not straightened around in her seat completely at the time the accident

happened, although she had been trying to settle herself in the seat from the time the car passed the trees. Her description of the accident is as follows: "Well, right after we went over this knoll, it just seemed as if we were going over another one; but it was another feeling: just as if we were going over another knoll, only I was thrown up so that I hit the top of the car and got a bump on my head, and I was thrown forward so my face went through the windshield; and it hit this, as it went flying over it hit this bank, and I saw it hit. The car bounced up and took the glass and smashed my face into it." After the accident, according to the plaintiff's testimony, James Turner said to her, "Oh, Donna, I am so sorry. It is all my fault. I don't know how I will ever make it up to you. I shouldn't have been going so fast."

There was evidence that the car was in good mechanical condition before the accident. The lights were fully on. The night was clear, but moonless. The roads were dry. There were no highway signs on the east and west road and no barricade or warning signal to indicate that that road ended at the intersection, where the accident occurred. As the car approached the intersection, it was going slightly upgrade. The tire tracks of the car showed that it had come "straight from the east, right straight off the end of that 'T' road." There were skid marks extending 36 feet east from the west shoulder of the north and south road, indicating that the driver had put on the brakes about as he entered the intersection.

James Turner testified that he drove in the middle of the road; that there were a series of little hills or knolls in the road; that as he approached the intersection the car was going about 35 miles an hour; that he was going uphill and thought that it was another knoll; that he did not know the road ended at the intersection; that he had never driven over it before; that he was expecting to go straight ahead; that he was at the east edge of the north and south road before he saw that the road he was on did not extend beyond the intersection; that he then yelled something and put on the brakes, but the car did not stop, and went into the ditch; that he saw the intersection about as he passed over the last knoll. He testified: "As to how close I think I would have to be up on the inter-section before I could see that the road drops off without going any further—well, if you were actually looking for it you might be able to see it at that other knoll, but if you weren't looking for it, you would have to be right up there on the edge of the north and south road before you would see it."

■ It seems apparent that the sixteen year old driver of the car drove off the road because (1) he was driving too fast, (2) he failed to anticipate that the road ended where it did end, and (3) he failed to observe the end of the road until it was too late to avoid the accident. An inference that just before the accident the car was hurtling through the night, out of control, with its protesting passengers being tossed about, and with an irritated and irresponsible driver, familiar with the road but who did not care what became of himself, his friends, or his father's car, behind the wheel, is an inference which, in our opinion, does not accord with a common-sense view of the evidence. The plaintiff is, of course, entitled to have the benefit of all favorable inferences which reasonably may be drawn from the evidence. She is not entitled to the benefit of unreasonable inferences. One fairly can believe that the evidence in this case does not show more than the lack of care, skill and judgment which might be expected from an ordinarily imprudent, immature, or inexperienced, but nonreckless, driver of an automobile. In other words, the evidence, viewed in the aspect most favorable to the plaintiff, is not inconsistent with the hypothesis that the plaintiff's injuries were the result of just ordinary carelessness on the part of James Turner.

■ "To constitute recklessness under the Guest Statute, conduct must be more than negligent and must be such as to manifest a heedless disregard for, or indifference to, the rights of others or an indifference to or heedless disregard for consequences. It need not involve moral turpitude nor wanton and wilful conduct." Roberts v. Koons, 230 Iowa 92, 97, 296 N.W. 811, 814.

■ The purpose of the Guest Statute was to relieve the owner and operator of an automobile from liability for negligence resulting in injury to a guest. To make a case under the statute, "It is not sufficient to show negligence, but the

plaintiff must go further than this and show a rash, heedless, disregard of danger that would be apparent to or reasonably anticipated by a person exercising ordinary prudence and caution under existing circumstances." Wright v. What Cheer Clay Products Co., 221 Iowa 1292, 1299, 267 N.W. 92, 95. "It must appear from the evidence that at the time and place of the accident the driver * * * was proceeding without heed of or concern for consequences, with no care, coupled with a disregard for the safety of his guest. * * * An error in judgment, thoughtlessness, or mere inadvertence do not constitute recklessness within the meaning of the statute." Tomasek v. Lynch, 233 Iowa 662, 10 N.W.2d 3, 7.

The Iowa cases dealing with the Guest Statute show that it is easier to define "reckless operation" than to be entirely consistent in applying the definition to varying fact situations. What the Supreme Court of Iowa has apparently tried to do is to give effect to the statute and to prevent guest passengers from recovering damages for injuries due to the common or ordinary negligence of host drivers. That court, no doubt, recognizes that most automobile accidents are due to the ordinary failings of those who drive: lack of caution, lack of skill, lack of judgment, lack of foresight, lack of alertness, lack of experience, lack of concentration, and the like. Nonliability of a host driver to a guest passenger injured in an automobile accident is the rule in Iowa, and liability is the exception. In applying its definition of "reckless operation" to specific cases, the Supreme Court of Iowa has, no doubt, been as consistent as could be expected in view of the vagueness of the standard to be applied. We cannot reconcile all the Iowa cases.

We think that the case of Mescher v. Brogan, 223 Iowa 573, 272 N.W. 645, supports the contention of the plaintiff here that her evidence made a case for the jury. In the Mescher case, Brogan, who was driving too fast at night, failed to anticipate a turn in the road and landed in the ditch. The jury returned a verdict for Mescher, a guest passenger, and the verdict was sustained. The Mescher case has not been overruled and was last cited with approval in Skalla v. Daeges, 1944, Iowa, 15 N.W.2d 638, 643. It seems improbable to us that the Supreme Court of Iowa would in the instant case follow Mescher v. Brogan, in view of its later rulings, particularly those in Tomasek v. Lynch, 233 Iowa 662, 10 N.W.2d 3, and Long v. Pearce, 233 Iowa 1025, 10 N.W.2d 50. The Tomasek case involved an accident at a "T" intersection. The driver failed to anticipate that the road ended at the intersection, and was going too fast to stop when he discovered that the road did not extend beyond the intersection. In Long v. Pearce, the defendant driver was going about 50 miles an hour when he ran into the side of a train at a grade crossing. It was held that the evidence in each of these cases was insufficient to support a verdict of reckless operation.

It is unnecessary for this court in the instant case to decide whether the trial court's construction of the Guest Statute is in complete accord with all of the pertinent decisions of the Supreme Court of Iowa. We are satisfied that in ruling that the plaintiff's evidence failed to make a case for the jury, the trial court reached a permissible conclusion under the applicable Iowa law.

The judgment is affirmed.