LAURITZ HANSEN, Administrator, Appellant, v. PETER DALL, Appellee.

No. 42917.

NOVEMBER 19, 1935.

Volney Diltz, and Rogers, Ruppelt & Ruppelt, for appellant.

Putnam, Putnam, Langdon & Fillmore, and Willoughby, Strack & Sieverding, for appellee.

RICHARDS, J.—Plaintiff-administrator, in this law action, seeks damages on account of the death of his decedent, who lost her life from injuries occasioned by the collision of two automobiles, in one of which decedent was riding as defendant's guest. The only question before us is whether, on the evidence and record in the case, there should have been submitted to the jury the questions whether there was reckless operation of the car by Harold Dall, the driver, and in event there was such reckless operation, whether same was the proximate cause of decedent's injuries and resultant death.

The accident in question happened at about 12:30 a. m. on May 6, 1933, near the town of Dike, Grundy county, upon the intersection of two public highways, namely, primary No. 57, extending east and west, and a graveled road, extending north and south. The paving on primary No. 57 was 18 feet in width, the graveled road was 28 feet wide from shoulder to shoulder. At the intersection there was a jog in the graveled road so that as the graveled road crossed primary No. 57 its north and south direction was somewhat deflected to a northwest and southeast direction. The two roads and the surrounding country were practically level. From all points on the graveled road, between said intersection and a point 2,000 feet north thereof, there was visible to one looking towards the southwest all that part of primary No. 57 which extended 2,200 feet west from the intersection, excepting that there were occasional large willow trees or trunks of trees that stood along the fence line on the west side of the graveled road. Sixty-six feet north of the intersection there was a stop sign facing travelers coming from the north on the graveled road. Before the accident it had been raining, and the

pavement was damp. At the time of the accident it was not raining, but misting, which atmospheric condition, according to the testimony, caused no interference with vision. There was no moon. The car in which decedent was riding was being driven by Harold Dall, son of defendant. Decedent, seventeen years old, was in the rear seat with Ed Hansen. Harold Dall, eighteen year old, and Dorothy Henningsen, seventeen years old, occupied the front seat, the former on the left side, the latter on the right.

The testimony as to the manner of the happening of the accident is for the most part that of Harold Dall, as plaintiff's witness. He testified substantially as follows: That previous to the accident, he, with the other three occupants of the car, was returning from a point eight miles north of the intersection, driving south on the graveled road at 25 to 30 miles per hour; that at a point about 280 feet north of the intersection he looked to his right, toward the west, and saw a car approaching from the west on the primary highway, said car being at said time at a point 2,000 feet west of the intersection, being west of some evergreens around the residence where Harold lived on the south side of primary No. 57; that, as he traveled south from that point to the intersection, the primary highway was at all times visible from the graveled road; as to the manner of driving from the point about 280 feet north of the intersection, the witness testified that he continued driving at 20 to 25 miles per hour until about 60 feet north of the intersection, but he also testified that at the point 280 feet north of the intersection he was driving not slower than 20 miles an hour, and that at that point slowed down his car and from that point, until the collision, he traveled between 5 and 10 miles an hour; he also testified that he did not stop at the stop sign but slowed down to 5 miles per hour, putting the car, a 1927 Model T Ford, in low gear, and continuing in low gear at about 10 miles per hour until he was near the paving, when he shifted to high gear, increasing speed to between 10 and 15 miles per hour as he crossed the intersection; he also testified that he came onto the paving at between 5 and 10 miles per hour. This witness also testified that after looking toward the west and seeing the approaching car he then looked to the east and saw nothing approaching from that direction and thereafter looked straight ahead. With respect to whether he again looked to the west after having seen

the car approaching, as above related, he testified he did not remember whether he looked again, and also testified he had no recollection of so doing. He testified that his car lights disclosed objects clearly 70 or 80 feet ahead, that there was no conversation in the car while the car was traveling from the point 280 feet north of paving. He also testified he had lived many years in the vicinity of the place of the accident and was well acquainted with and had frequently traveled over both highways and the intersection. As to the cars coming into collision, he testified that when he had driven across the pavement to a point where the front wheels of the car had crossed over and were south of the pavement, and the rear wheels were about to leave the pavement, Dorothy Henningsen made an outcry and Harold then saw, only 10 or 15 feet west from him the car that had been approaching from the west, and immediately thereafter the latter car, traveling on the south half of the pavement struck Harold's car at the right rear fender, and as a result Harold's car turned over and finally came to rest upside down 65 to 75 feet south of the paving. Harold also testified that the car approaching from the west did not upset, but passed on to the east, then returned, and was used to convey the decedent to a doctor's office. This witness also testified that at all times after leaving the point 280 feet north of the paving he knew the car was approaching from the west, that he had formed no opinion as to its speed and that he could not judge its speed from his point of observation. He also testified that he did not think there was any danger and that he thought he had plenty of time to get across the intersection. It is the testimony of Dorothy Henningsen, that when the Dall car was north of a culvert, which is 241 feet north of center of the paving, she saw the car approaching from the west but said nothing then, and that when she made the outcry and saw the approaching car again it was at about the bridge, at which time she says the front wheels of the Dall car had not left the paving on the south side thereof. The plat in evidence indicates that the center of this bridge is about 190 feet west of the middle line of the graveled road. It is also the evidence that the driver of neither car gave any signals of approach.

The statute upon which plaintiff predicates his right of recovery, found in Code 1931, is as follows:

"5026-b1. Liability to guest. The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

In applying this statute, difficulties arise principally from the use of the word "reckless". In interpreting the legislative intent in the use of the word, this court, with some amplifications, has followed what was said in Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46. While in the opinion in that case there was discarded wantonness or willfulness as essential or necessary ingredients of recklessness within the adopted meaning of that word, we did hold in that opinion that the history of the enactment of this statute indicates that the legislature intended by the word "reckless" something more than negligence. The opinion describes this "more than negligence" in the operation of a car, as proceeding without heed of or concern for consequences, and the opinion says that the word "recklessness" implies no care, coupled with disregard for consequences. In Wilde v. Griffel, 214 Iowa 1177, 243 N. W. 159, it was said that in order that the conduct of the driver be classified as reckless within the meaning of section 5026-b1, it must be such as to manifest a heedless disregard or indifference to the rights of others.

In the case before us, in applying the above statute, the evidence and record must be considered in a light as favorable to plaintiff as is reasonably possible. So doing, it may be said that the evidence was sufficient to have warranted a jury in finding that Harold Dall failed to look toward the approaching car from the time he was 280 feet north of the paving until, when on the paving, his attention was attracted to the fact that the approaching car was about to collide with his car, and that he failed to come to a full stop at the stop sign and that he must have known at all times, after his observation at the point 280 feet north of the paving, that there was a car approaching the intersection from the west. These are the salient facts on which plaintiff depends to establish recklessness. To say that Harold Dall saw a car approaching the intersection, and to say that he proceeded to cross the intersection without further attention to such car,

would not be sufficient data on which a reasonable mind, seeking to determine the question of the recklessness of such actions, would be content to rest a conclusion. Before attempting to reach such a conclusion, a reasonable mind would demand further information or data and would make the inquiry, At what distance away was the approaching car? To illustrate the necessity for an answer to this question, let us assume three situations of fact. First, assume that the approaching car was at such distance that it could not possibly reach the intersection until the Dall car had plenty of time to traverse the 280 feet, cross the paving and proceed a considerable distance beyond before the approaching car reached the intersection. Concededly, under such facts ordinary care and prudence would not suggest a necessity that the Dall car stop and wait for the approaching car to traverse the intersection. Second, assume a situation where the approaching car was at a less distance than in the preceding assumed case. The more we shorten the distance the more nearly we arrive at a situation where the judgment of an ordinarily prudent person would interdict attempting to cross the intersection, and a person attempting to cross would be negligent. He might be exercising his own judgment, but its poor quality condemns his action as being negligent in character. Third, there could be facts shown that would warrant a jury in concluding therefrom that attempting to cross the intersection evidenced those things that characterize recklessness. The digression in which we have just indulged is to illustrate it appears to us that one of the determining factors in the evidence is that the approaching car was 2,000 feet distant when observed, and the Dall car a short distance from the intersection, as shown. Considering all of the evidence, in a light as favorable to plaintiff as is reasonably possible, including the undisputed evidence of distances, the situation appeals to us as one illustrated by the second assumed state of facts, that is, a situation wherein Harold Dall was acting upon the opinion or judgment that he had that there was time to safely cross the paving. Though it may have been poor judgment, from which negligence could be found, more than exercise of poor judgment is necessary to establish recklessness, as was held in Brown v. Martin, 216 Iowa 1272, 1286, 248 N. W. 368, 374, in which it was said, ''regardless of the consequences, a mere error in judgment amounts to no more than negligence and is not recklessness.'' We cannot see that the

evidence warrants a finding that in culpability Dall went beyond the exercise of poor judgment, that is, a finding that he was proceeding with disregard for consequences and without heed or concern for consequences, and as reasons therefor let us further consider the fact situation. As we have said, there cannot be discarded the distance of 2,000 feet of the approaching car when observed, and the relatively short distance to be traveled by Harold Dall in order to cross the intersection ahead of the approaching car, in considering whether the assumption by Harold Dall that he could cross safely, without further observation of the other car, constituted poor judgment evidencing negligence, or whether it was more than negligence amounting to recklessness. And in weighing the facts, and arriving at a right conclusion, one should envisage the actual situation in which Harold found himself while the whole occurrence was unfolding, divorced from any effect on one's judgment that might unconsciously come from the thought of a most regrettable happening, the loss of life by plaintiff's decedent. As perhaps assisting us in seeing things as they appeared when transpiring, there is in the evidence as a part of the res gestae the testimony of plaintiff's witness, Dorothy Henningsen, riding in the front seat on the right side, that at about the same place where Harold Dall observed the other car, she also saw it, but she was not moved by the situation to mention the fact. There is, in association with this matter of distances of the cars from the intersection, an additional fact, viz: the location of the Dall car when struck. It had entered and had nearly crossed the intersection, the front wheels had passed entirely over the paving onto the gravel to the south, the rear wheels only remaining thereon, and they were about to pass off the paving onto the gravel. The car was moving on to the south, and all but a small portion of the 18 feet of paving was free and open to other traffic to the north of the Dall car. These facts, in connection with the matter of distances above mentioned, are significant on the question whether the approaching of the car from the west was such a threatening of danger that a jury would be warranted in finding that Harold Dall, in proceeding across the intersection, acted without heed of consequences and without concern for consequences, with no care, disregarding consequences, recklessly. As we have indicated, we think that a jury would not be warranted by the evidence in so concluding. It appears to us that here was

a fact situation in which there was room for the exercise of judgment (and on the matter of recklessness we are not concerned with whether it was sound or poor judgment), as to there being time to safely cross the paving, rather than a situation where the dangers were so apparent that an attempt to cross could be said to manifest that ''heedless disregard or indifference to the rights of others'', which is recklessness.

In coming to our conclusion, we cannot avoid recognizing the force of the analysis of the ''guest'' statute under which plaintiff seeks to recover as set out in Shenkle v. Mains, 216 Iowa 1324, 1328, 247 N. W. 635, 637, where it is said:

''The two grounds upon which recovery may be predicated under section 5026-b1 are *exceptional* and not general. The *general* rule is that a guest cannot recover. The exceptional grounds are: (1) 'intoxication' of the driver, (2) 'reckless operation' by the driver. The exceptional character of these grounds implies an infrequency of application thereof. To use and apply the exceptions as the general rule, and in effect to supplant the general rule with the constant use of the exceptions, is to drive against a red light. If the application of the exceptions becomes more frequent than that of the general rule, it may well be deemed a warning sign that we are misapplying the exceptions.''

This court can but interpret the statute as evidently intended by the legislature, and it is in so doing that we come to the conclusion above indicated.

It follows that the motion directing verdict for defendant was rightly sustained and the motion to set aside such verdict and for new trial was rightly overruled. The case is affirmed.—Affirmed.

KINTZINGER, C. J., and DONEGAN, ALBERT, and POWERS, JJ., concur.

PARSONS, J., taking no part.