C. F. LONG, Administrator, Appellee, v. HARRY PEARCE et al., Appellants.

No. 46090.

JUNE 15, 1943.

OPINION MODIFIED AND REHEARING DENIED SEPTEMBER 27, 1943.

Lundy, Butler & Lundy, of Eldora, for appellants.

H. E. Long, of Union, and Leming & Hobson, of Hampton, for appellee.

WENNERSTRUM, J.—Plaintiff, as administrator of the estate of Roberta Jane Clemons, deceased, seeks damages from the defendants on account of fatal injuries received by decedent while a guest passenger in an automobile operated by Neil Pearce and owned by his father, Harry Pearce. On the trial of this action a verdict was returned in favor of the plaintiff and a judgment was thereafter entered against the defendants. A motion for a new trial was overruled and defendants have appealed.

The following facts are disclosed by the evidence: The fatal accident occurred in Eldora, Iowa, on February 2, 1941, as the result of the driving of an automobile operated by Neil Pearce into the side of a Minneapolis & St. Louis railroad train as it was crossing one of that city's streets near the depot. The occupants of the car were Neil Pearce and Roberta Jane Clemons, who were seated in the front seat, and Herbert Moore and Arlene Glenney, who occupied the rear seat. Neil Pearce and Herbert Moore were, at the time of the accident, eighteen years of age. Roberta Clemons and Arlene Glenney were sixteen and eighteen years of age respectively at the time of the accident. The young men lived on near-by farms southeast of Eldora and both were graduated from the Eldora High School in May 1940. Arlene Glenney was a graduate of the Union High School at Union, Iowa, and Roberta Clemons was a senior in the Union High School at the time of her death.

On the evening of the accident the young men met the two girls in Union and then drove to Eldora with the intention of attending a picture show there. Upon arriving in Eldora they learned that there were no seats available in the theater and decided to wait for the second showing of the picture. The young people returned to the parked car and thereafter drove away and proceeded in their driving on the street leading to the Minneapolis & St. Louis depot.

The testimony of the surviving occupants of the automobile

as to their remembrance of the incidents after they left the square in Eldora is as here related.

Herbert Moore's testimony, in part, was:

"I do not remember a single thing of any kind that was said or done between the time that we got into the car and the time that I saw the wheels of the car that were ahead of me. By the wheels of the car I mean the wheels of the train. At the time I saw those wheels we were practically on it."

Arlene Glenney testified, in part, as follows:

"I do not remember of any course we took in town, or any streets we drove on or anything that was said or anything that was done. I have absolutely no remembrance about it. I know now that I was unconscious after the accident. I recovered consciousness when I was in the hospital the same evening, but I do not have any remembrance of anything that occurred from the time I got into the car until the time I recovered consciousness in the hospital. I have no idea on which street we ran and no idea of what was said or what was done."

Neil Pearce testified, in part, as follows:

"I do not remember of seeing the train; I do not remember of hearing any whistle or any bell; I do not remember of seeing any lights. In fact, I don't remember anything that happened at the time of the crash nor anything that happened after the crash. I do not remember whether I was in the car or anything about it. I have no remembrance about anything that occurred from the time I got just about even with this car, or near even with him, until I waked up in the hospital."

There was testimony presented showing that the car driven by Neil Pearce passed another car approximately 175 to 200 feet east of the collision point. One of the occupants of this car stated that they were driving around fifteen to twenty miles per hour and that the Pearce car pulled away from them. This person, in the course of his testimony, said:

"I knew when he passed me that the train was coming as

I had heard it whistle before that. I knew if he didn't slow up it was going to be close at the intersection. He did not slow up that I noticed.''

The other occupant of this second car testified:

''There was nothing unusual about their method of driving. They were going fast, but I didn't observe anything unusual about speed either way. I do not know how fast they were going * * *.''

A brakeman on the train at the time that it was struck by the automobile, observed the Pearce car as it approached the train, from a point about 90 feet away until the collision. He stated that it was his opinion the car was traveling forty or fifty miles per hour. Another witness estimated the speed at about forty-five to fifty miles per hour. The sheriff of Hardin county testified that he made an inspection of the defendants' car shortly after the accident and found that the glass of the speedometer had been cracked and that the indicator on it was stuck on the numeral 45.

There were numerous motions presented for the consideration of the court, including a motion to direct a verdict in favor of the defendants and also to strike particular specifications of claimed recklessness. Certain allegations of the petition were stricken by the court but other claimed grounds of recklessness were submitted to the jury. The defendants claim error on the part of the court in overruling their motions, and particularly in overruling their motion for a new trial, in which they set out the errors which they claimed the court had committed. We shall not enumerate these various grounds inasmuch as we believe that this case can and should be disposed of by our consideration of the question whether the court should have sustained the motions to strike the specifications of recklessness which it submitted.

In the recent case of Harvey v. Clark, 232 Iowa 729, 733, 6 N. W. 2d 144, 146, 143 A. L. R. 1141, this court gave consideration to a factual situation identical in many respects to the facts presented in the instant case. In this last-cited case an automobile was also driven into the side of a train. There

was no definite evidence in the Harvey case as to the speed of the automobile. The only showing in this respect was that there was testimony that the headlights of the automobile were bobbing up and down, and it is claimed that this indicated excessive speed. In this last-cited case, this court, speaking through Justice Garfield, said:

"* * * Is a jury finding of recklessness justified merely from proof that an automobile was driven into the side of a moving passenger train at night when the driver apparently did not see a wigwag crossing signal which was in operation? Like the court below, we answer in the negative. A finding of recklessness from the showing made here, viewed in the light most favorable to appellant, would necessarily be based largely on speculation and conjecture.".

In this last-cited case a motion for directed verdict for defendant was affirmed. In the present case there is testimony by which it can be said that a jury could find that the defendant driver was traveling forty-five to fifty miles per hour. There is also testimony that the whistle of the train was blowing and that the headlights on the train lighted up the right of way. There is further testimony as to where the railroad train would first come in view and that one could see the street from this point for a distance of approximately 150 feet. The question then presented is whether or not the facts in this case come within our ruling in the case of White v. Center, 218 Iowa 1027, 1033, 254 N. W. 90, 93. In this case a guest was injured as the result of an automobile being driven into a wagon during the afternoon. We there held that a jury question was presented and said:

"Under the evidence presented in this case, we think a jury might reasonably infer that, if the driver of the automobile used any care whatever in keeping a lookout ahead, he must have seen the wagon when he was a sufficient distance away from it that he could have easily slowed down or turned out and thus have avoided hitting it. If he did not see this wagon, which the evidence shows was visible for at least a

quarter of a mile, he was certainly guilty of recklessness in using no care whatever; if he saw the wagon but did not see it until it was too late to avoid hitting it, then a jury might reasonably infer that his inability to avoid hitting it was due to the excessive speed at which he was driving which made it impossible for him to have his car under control and be able to avoid objects such as this wagon which he was bound to know might be ahead of him in the road.''

We do not believe the facts in the present case are at all similar to the cited case. There is no testimony by any of the occupants of the car when they saw the train, if at all, with the exception of Herbert Moore, who said he saw the wheels of the train just before the automobile struck it. There is testimony of a maximum speed of fifty miles per hour. We have held that speed at this rate is not in and of itself evidence of recklessness. We have also held that the plaintiff must show some act which would be pronounced an utter indifference to the safety of the guests in his car. Levinson v. Hagerman, 214 Iowa 1296, 1299, 244 N. W. 307. As was held in this last-cited case, no such indifference is shown in the present case.

The question is presented whether or not all these facts justify the submission of this case to the jury on a charge of recklessness. We do not believe that they do. This court has passed upon the question of recklessness in a number of cases but we do not deem it necessary to quote from each of them. Our prior holdings are well known. However, the statement of Justice Miller in the case of Peter v. Thomas, 231 Iowa 985, 991, 2 N. W. 2d 643, 646, seems quite applicable to the present case:

''We cannot say that failure to exercise sufficient care to see and appreciate the danger was of itself evidence of the absence of all care, and, therefore, reckless disregard for consequences. Neither does the record herein come within the rule applied in Mescher v. Brogan, supra, where the recklessness consisted of indifference to protests of other occupants of the car who were justifiably alarmed over the actions of the driver and made reasonable protests in regard thereto.

''Here there was no apprehension on the part of any oc-

cupant of the defendant's car that there was any danger present. No protest was made. No reason for a protest is asserted. Under such circumstances, if danger was present, before we could say that defendant was reckless, we would have to say that the danger was sufficiently obvious and apparent that the jury was warranted in concluding from the whole record that defendant knew of it and proceeded without heed of the consequences.''

Other citations which support this last-quoted statement and our holding in this case are: Roberts v. Koons, 230 Iowa 92, 97, 98, 296 N. W. 811; Paulson v. Hanson, 226 Iowa 858, 863, 285 N. W. 189; Wright v. What Cheer Clay Prod. Co., 221 Iowa 1292, 1302, 267 N. W. 92; Wion v. Hayes, 220 Iowa 156, 163, 261 N. W. 531; Brown v. Martin, 216 Iowa 1272, 1285, 1286, 248 N. W. 368; Welch v. Minkel, 215 Iowa 848, 853, 854, 246 N .W. 775.

Further cases involving the question of recklessness, under somewhat similar circumstances, are: Morgan v. Tourangeau, 259 Mich. 598, 244 N. W. 173; Balcer v. Pere Marquette Ry. Co., 266 Mich. 538, 254 N. W. 198.

Upon a review of the entire record we have concluded that the court was in error in submitting the particular specifications of recklessness that it did, and consequently it must be reversed.—Reversed.

SMITH, MILLER, MANTZ, BLISS, and HALE, JJ., concur.

GARFIELD, C. J., and OLIVER and MULRONEY, JJ., dissent.