**RUSSELL v. TURNER et al.**
**Civil Action No. 116.**

District Court. N. D. Iowa,
Central Division.
July 1, 1944.

Kelleher & Kelleher, of Fort Dodge, Iowa, for plaintiff.

Floyd E. Page, of Denison, Iowa, and Alan·Loth, of Fort Dodge, Iowa, for defendants.

GRAVEN, District Judge.

In this action the plaintiff seeks damages for injuries sustained while riding as a guest in a car owned by the defendant, A. H. Turner, and driven by the defendant, James Turner, his son with his father's permission. The injuries were caused by the car going off the end of an east and west road which terminated at an intersection with a north and south road near Pocahontas, Iowa. This opinion has to do with the sustaining of the defendants' motion for a directed verdict in their favor at the close of all of the evidence.

In cases under the so-called Iowa Guest Statute, which is § 5037.10 Iowa Code of 1939, recovery can only be had by a guest where the conduct of the driver of the car amounts to recklessness. The vital and important question in these so-called guest cases is whether there is sufficient evidence of recklessness to justify the submission of the case to a jury. No federal court opinions have been found dealing with the Iowa Guest Statute.

The plaintiff, a girl 15 years of age, a resident of the State of Illinois, was a visitor in her grandparents' home at Pocahontas, Iowa. On Sunday evening, August 29, 1943, the plaintiff, together with Alfred Victer, age 16, Mary Ann Lorge, age 14, and the defendant, James Turner, age 16, were riding around in the A. H. Turner car with James Turner doing the driving. The young people after attending a movie at a nearby town, came back to Pocahontas, Iowa, and had a lunch there which they finished around 11 o'clock P.M. The car with these four young people in it was then driven out from Pocahontas in a southwesterly direction with James Turner driving the car. It is the claim of the plaintiff that James Turner wished them to see a certain road, while it is the claim of the other occupants of the car that the object of the trip was to view a certain farm house of southern colonial style. The car was driven one mile south and five miles west of Pocahontas when it went off the end of the road at a point where the east and west road upon which the car was traveling ended by coming into a north and south road. Neither the east and west road nor the north and south road was a primary road or a marked road. The road on which they were traveling was graveled to a point a mile east of the intersection. The last mile east of the intersection was an ordinary dirt road in good condition. The right of way of the five-mile stretch of the road upon which the car was traveling, ran straight east and west. It was a pleasant summer night with normal weather conditions. The moon was not shining. It had been dry weather and the road was dry. The car was a 1942 Chevrolet of the two-door type in excellent mechanical condition. The lights and brakes were in good order. The lights were on full at all times.

The road on which they were driving terminated by coming in at right angles to a north and south road and not extending beyond. The north and south road had been lifted up by grading and had been graveled. A profile map of the north and south road covering a distance from 800 feet south of the intersection to a point 1000 feet north of the intersection shows that the center point of the intersection was 6 feet higher than the low point south of the intersection and 5 feet higher than the low point

north of the intersection. The traveled portion of the north and south road was 24 feet in width.

On the east and west road between 900 and 1000 feet east of the intersection there were some trees growing in the right of way which caused the road to make a slight curve or bend. This curve or bend was somewhat in the nature of a contraction of the traveled portion of the road. West of the trees the traveled portion was 24 feet wide and at the trees it was 20 feet wide, and east of the trees it was from 22 to 23 feet wide. The east and west road slopes moderately up and down as it approaches the north and south road. At a point 1000 feet east of the intersection the road is 3 feet lower than it is at the intersection; at a point 500 feet east it is 2 feet higher; at a point 150 feet east it is 2.1 feet lower, and 100 feet east it is 1.8 feet lower. The intersection of the north and south road and the east and west road is on a knoll so far as both roads are concerned. Because of the knoll and the grading the intersection is at an elevation above the surrounding terrain. West beyond the intersection where the east and west road would go if it were extended is an open pasture which is 8 feet lower than the intersection. There are no trees or buildings in this area which would have been the right of way of the east and west road if it had been extended on west. West of the intersection there is a fence running east and west on about what would be the north line of the right of way of the east and west road if it had been extended, and back some distance in the pasture there is a tree which is about on what would be the south line of the right of way if the road had been extended. On the west right of way line of the north and south road there is a fence running north and south. It is an ordinary fence of netting and barbed wire measuring 44 inches in height on the average to the top barbed wire. One wooden post and one steel post of this fence are within the area immediately west of the intersection. It would be possible by careful observation to see a portion of the top of these posts some distance away, approaching the intersection from the east.

None of the occupants of the car had ever been on the east and west road before and it was a totally unfamiliar road so far as all of them were concerned. James Turner had been over the north and south road once several months before but had no recollection of this particular intersection. There were no signs or reflector buttons or devices indicating the ending of the road. At the time in question there was no traffic on the north and south road or ahead of the car in question on the east and west road. As the car approached the intersection from the east, the plaintiff was sitting sideways in the front seat facing James Turner, the driver, and talking with him and with Alfred Victer and Mary Ann Lorge who were in the back seat. As the car was going west approaching the clump of trees, it was going 75 miles an hour. The plaintiff and the other occupants of the car asked James Turner to drive slower. His response was: "I don't care. I'm mad." He decreased his speed to 65 miles an hour and continued at that rate towards the intersection. The plaintiff felt the car swerve as it went past the trees and she was swayed over and back as the car traversed from the trees to a point 500 feet east of the intersection. She continued in her sideways position throughout. None of the occupants of the car except the driver were in position to look ahead or were looking ahead. The car traveled in a straight line until it went over the embankment. There were skid marks which extended in a straight line 36 feet back from where the car went over the embankment indicating where the brakes took hold. Since there would be a brief interval between the time the danger was observed and the brakes could be applied and take hold, it is obvious that James Turner observed the ending of the road a short distance back of where the skid marks started. At or about the time the danger was observed James Turner called: "Look out!" The car went over the embankment on the west side of the intersection down into the ditch and pushed some distance beyond the ditch. The plaintiff was thrown against the windshield and received a very severe and painful cut on her face which has left a permanent scar. None of the other occupants of the car sustained serious injury. The car was upright when it came to rest, and the occupants were able to open a door and get out.

The defendant, James Turner, after the accident stated to the plaintiff that he had been driving too fast and repeated this statement later to several of the plaintiff's relatives.

Section 5037.10 of the 1939 Code of Iowa provides as follows:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

Since in the instant case there was no intoxicating liquor in any way connected with the case, the matter of concern in this case is the construction given to the world "reckless" in the statute by the Iowa Supreme Court.

■ Section 5037.10 was enacted by the 42nd General Assembly of Iowa (1927) as Chapter 119 of the Acts of that Assembly and became effective July 4th 1927. The first case under this statute came before the Iowa Court in the case of Lou Siesseger v. Puth, 1931, 211 Iowa 775, 234 N.W. 540, but only procedural matters are dealt with in the opinion in that case. In the case of John Siesseger v. Puth, 1931, 213 Iowa 164, 239 N.W. 46, which grew out of the same mishap as the case just referred to but which involved a different plaintiff, the Iowa Court laid down the construction of the word "reckless" in the statute which has been followed by all of the subsequent cases. That construction is given at page 182 of the Iowa citation, at page 54 of 239 N.W., where the Iowa Court states:

"In light of the circumstances under which said chapter 119 was passed, it is apparent, we think, that the Legislature intended the word 'reckless' therein to mean 'proceeding without heed of or concern for consequences.' To be 'reckless,' one must be more than 'negligent.' Recklessness may include 'willfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless' without being 'willful' or 'wanton,' but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies 'no care, coupled with disregard for consequences.' "

■ A cause of action based upon recklessness is a different cause of action than one based upon negligence, and a party cannot after the expiration of the two-year statute of limitation period change his cause of action from negligence to recklessness. McCornack v. Pickrell, 1940, 229 Iowa 457, 294 N.W. 746. In that case, on page 459 of the Iowa citation, at page 747 of 294 N.W., it is stated:

"A claim of recovery for recklessness involves a different basis than one for negligence. It is true, as plaintiff asserts, that recklessness includes negligence, but it involves more. The liability is different, the basis of recovery is different."

That recklessness under the guest statute is not to be confused with negligence is well and briefly stated by the Iowa Court in the case of Petersen v. Detwiller, 1934, 218 Iowa 418, on page 421, 255 N.W. 529, on page 530:

"It must be concluded that conduct showing a reckless disregard of the rights of others is entirely distinct from mere negligent conduct: 'Recklessness' is conduct which * * * must not be confused with conduct arising from inadvertence or error in judgment."

■ In this connection it should be noted that there are no degrees of negligence in Iowa. Siesseger v. Puth, 1931, 213 Iowa 164, 170, 171, 239 N.W. 46.

■ The doctrine of res ipsa loquitur is not applicable to cases under the guest statute. Phillips v. Briggs, 1932, 215 Iowa 461, 245 N.W. 720; Harvey v. Clark, 1942, 232 Iowa 729, 6 N.W.2d 144, 143 A.L.R. 1141.

■ While in cases involving negligence contributory negligence bars recovery, yet in cases under the guest statute contributory negligence is not an element to be considered or dealt with. Siesseger v. Puth, 1931, 213 Iowa 164, 182, 239 N.W. 46; Neessen v. Armstrong, 1931, 213 Iowa 378, 239 N.W. 56. However, assumption of risk by the guest is available as affirmative defense. Garrity v. Mangan, 1942, 232 Iowa 1188, 6 N.W.2d 292; Miller v. Mathis, Iowa 1943, 8 N.W.2d 744. As to distinction, if any, between assumption of risk and contributory negligence in guest cases, see 25 Iowa Law Review 690.

■ Iowa has Sections 5022.04 and 5022.05 of the 1939 Code of Iowa defining reckless driving and providing a punishment for such driving. These statutes are criminal statutes and have nothing to do with what constitutes recklessness under the guest statute. Fleming v. Thornton, 1933, 217 Iowa 183, 251 N.W. 158.

■ In cases under the guest statute it is proper to instruct the jury that reckless-

ness cannot be determined by the results of an accident. Martin v. Momyer, 1941, 230 Iowa 1158, 300 N.W. 310. The happening of an accident itself does not establish recklessness. Duncan v. Lowe, 1936, 221 Iowa 1278, 268 N.W. 10. In the case of Wion v. Hayes, 1935, 220 Iowa 156, on page 163, 261 N.W. 531, on page 535, the Iowa Court states:

"It was well observed in Neessen v. Armstrong, 213 Iowa 378, 239 N.W. 56, 60, that, 'The mind is prone to look upon the result, but unless the acts of the defendant would have been reckless within the meaning of the law without the resulting injury to Neessen, they are not reckless merely because Neessen lost his life.'"

The pivotal and important question in every case under the guest statute is whether there is sufficient evidence of recklessness to justify the submission of the case to the jury. In the following cases, all of which were cases where the guest sued the host driver or owner of the host car, the Iowa Court held that the evidence was sufficient to justify the submission of the case to the jury: Cerny v. Secor, 1931, 211 Iowa 1232, 234 N.W. 193; Hart v. Hinkley, 1933, 215 Iowa 915, 247 N.W. 258; White v. Mc-Vicker, 1933, 216 Iowa 90, 246 N.W. 385 (sufficient as to one specification); Siesseger v. Puth, 1933, 216 Iowa 916, 248 N.W. 352; White v. Center, 1934, 218 Iowa 1027, 254 N.W. 90; City National Bank v. Steele, 1935, 220 Iowa 736, 263 N.W. 233 (evidence not set out but held sufficient); Wright v. What Cheer Clay Products Company, 1936, 221 Iowa 1292, 267 N.W. 92; Wright v. Mahaffa, 1936, 222 Iowa 872, 270 N.W. 402; Mescher v. Brogan, 1937, 223 Iowa 573, 272 N.W. 645; Claussen v. Estate of Johnson, 1938, 224 Iowa 990, 278 N.W. 297; Reed v. Pape, 1939, 226 Iowa 170, 284 N.W. 106; Allbaugh v. Ashby, 1939, 226 Iowa 574, 284 N.W. 816; Fraser v. Brannigan, 1940, 228 Iowa 572, 293 N.W. 50; McKlveen v. Townley, 1941, 230 Iowa 688, 299 N.W. 25; Crowell v. Demo, 1941, 231 Iowa 228, 1 N.W.2d 93; Maland v. Tesdall, 1942, 232 Iowa 959, 5 N.W.2d 327.

In the following cases it was held that there was not sufficient evidence of recklessness to permit the submission of the case to the jury: Neessen v. Armstrong, 1931, 213 Iowa 378, 239 N.W. 56; Kaplan v. Kaplan, 1931, 213 Iowa 646, 239 N.W. 682; Wilde v. Griffel, 1932, 214 Iowa 1177, 243 N.W. 159; Levinson v. Hagerman, 1932, 214 Iowa 1296, 244 N.W. 307; Koch v. Roehrig, 1932, 215 Iowa 43, 244 N.W. 677; Phillips v. Briggs, 1932, 215 Iowa 461, 245 N.W. 720; Welch v. Minkel, 1933, 215 Iowa 848, 246 N.W. 775; Brown v. Martin, 1933, 216 Iowa 1272, 248 N.W. 368; Shenkle v. Mains, 1933, 216 Iowa 1324, 247 N.W. 635; Newville v. Weller, 1934, 217 Iowa 1144, 251 N.W. 21; Stanbery v. Johnson, 1934, 218 Iowa 160, 254 N.W. 303; Petersen v. Detwiler, 1934, 218 Iowa 418, 255 N.W. 529; Wion v. Hayes, 1935, 220 Iowa 156, 261 N.W. 531; Wilson v. Oxborrow, 1935, 220 Iowa 1135, 264 N.W. 1; Hansen v. Dall, 1935, 220 Iowa 817, 263 N.W. 530; Bowermaster v. Universal Producing Company, 1936, 221 Iowa 831, 266 N.W. 503; Popham v. Case, 1937, 223 Iowa 52, 271 N.W. 226; Mayer v. Sheetz, 1937, 223 Iowa 582, 273 N.W. 138; Paulson v. Hanson, 1939, 226 Iowa 858, 285 N.W. 189; Crabb v. Shanks, 1939, 226 Iowa 589, 284 N.W. 446; Scott v. Hansen, 1940, 228 Iowa 37, 289 N.W. 710; Roberts v. Koons, 1941, 230 Iowa 92, 296 N.W. 811; McDonald v. Dodge, 1941, 231 Iowa 325, 1 N.W.2d 280; Vandell v. Roewe, 1942, 232 Iowa 896, 6 N.W.2d 295; Tomasek v. Lynch, Iowa 1943, 10 N.W.2d 3; Long v. Pearce, Iowa 1943, 10 N.W.2d 50.

The following cases are sometimes cited in this connection, but the sufficiency of the evidence was not passed on in them: McQuillen v. Meyers, 1932, 213 Iowa 1366, 241 N.W. 442 (exceptions to instructions only); Fleming v. Thornton, 1933, 217 Iowa 183, 251 N.W. 158 (jury's verdict for defendant); Peter v. Thomas, 1942, 231 Iowa 985, 2 N.W.2d 643 (jury's verdict for defendant).

The character of the case in which recovery may be had is set forth by Judge Evans speaking for the Court, in the case of Shenkle v. Mains, 1933, 216 Iowa 1324, on page 1328, 247 N.W. 635, on page 637:

"The two grounds upon which recovery may be predicated under section 5026-b1 are exceptional and not general. The general rule is that a guest cannot recover. The exceptional grounds are: (1) 'intoxication' of the driver; (2) 'reckless operation' by the driver. The exceptional character of these grounds implies an infrequency of application thereof." Accord Crabb v. Shanks, 1939, 226 Iowa 589, 594, 284 N.W. 446.

In the overwhelming number of guest cases, the guests whose lives and safety are involved are relatives or friends of the driver and in every guest case the driver

460

endangers himself as much as he endangers his guests. These facts doubtless contribute to the reluctance of the Iowa Court to hold that the evidence in a case is sufficient to justify a finding that the driver does not care whether he or his guests are killed or not.

The Iowa Court has long since repudiated the rule that a scintilla of evidence is sufficient to justify the submission of the case to a jury. Scott v. Hansen, 1940, 228 Iowa 37, 289 N.W. 710.

Prior to the recent case of Peter v. Thomas, 1942, 231 Iowa 985, 2 N.W.2d 643, supra, there was some doubt as to whether in order to furnish one of the elements of recklessness the driver of the car in guest cases had to have had actual knowledge of the danger or peril or whether it was sufficient if the driver in the exercise of ordinary care could have acquired that knowledge. That question was settled in the case of Peter v. Thomas, supra. The Iowa Court in that case had before it exceptions to an instruction in which the trial court had instructed the jury (page 988 of 231 Iowa, page 645 of 2 N.W.2d) that the:

"* * * Defendant could not be deemed guilty of recklessness unless it is further shown that the danger and peril, if there was such, was obvious and apparent and was known to him, and that he acted in entire disregard of the existing danger and proceeded without heed of, or concern for, consequences."

The plaintiff excepted to this instruction because it placed upon plaintiff the burden of proving the defendant's actual knowledge of the danger or peril. The Iowa Court held that the instruction was a proper one. The plaintiff in this case of Peter v. Thomas, supra, in support of his contention that the instruction was erroneous, relied upon, among other cases, the case of White v. Center, supra. The Iowa Court, on page 991 of 231 Iowa, on page 646 of 2 N.W.2d, in Peter v. Thomas, supra, answered that contention as follows:

"The record herein is not sufficient to come within the rule announced in White v. Center, supra, where the danger was so obvious that it must have been known and appreciated in the exercise of any care whatever."

Thus, one of the necessary and essential elements to sustain proof of recklessness under the guest statute is that the driver of the car must have actual knowledge of the danger or peril or the danger or peril must be so obvious that it would have been known in the exercise of any care whatsoever.

In the instant case the specifications of recklessness against James Turner are that he was driving the car "at a dangerous and excessive speed and out of control, and without any care or concern for consequences."

Claimed excessive speed is generally one of the elements involved in guest cases. At the time the earlier cases were decided under the guest statute the Iowa speed statute was of the fixed type wherein speed over a certain definite figure was prohibited. At the time of the mishap which was involved in the case of Siesseger v. Puth, 1933, 216 Iowa 916, 248 N.W. 352, driving at a rate of speed in excess of 40 miles per hour was prohibited. The 43rd General Assembly of Iowa, 1929, c. 128, enacted a so-called elastic type of speed law now found in Section 5023.01 of the 1939 Code of Iowa, part of which reads as follows:

"Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law."

The words "such driver having the right to assume, however, that all persons using said highway will observe the law" were added by the 46th General Assembly of Iowa, 1935, c. 49.

While the duty imposed by the statute to drive at a prudent and reasonable speed is distinct from the duty imposed of being able to stop within the assured clear distance ahead (Wells v. Wildin, 1938, 224 Iowa 913, 277 N.W. 308, 115 A.L.R. 169), yet whether a certain speed constitutes negligence under the statute depends upon the circumstances. Thus, for there even to be negligence under the Iowa law there must be excessive speed under the circumstances. Thus, to charge a driver with excessive speed without more is merely to charge negligence. A high rate of

speed alone does not make a case for the jury under the guest statute; there must be other material facts and circumstances combined with speed before there is an issue for the jury on the question of recklessness. Mayer v. Sheetz, 1937, 223 Iowa 582, 273 N.W. 138. In the cases of McDonald v. Dodge, 1941, 231 Iowa 325, 1 N.W.2d 280, and Scott v. Hansen, 1940, 228 Iowa 37, 289 N.W. 710, speeds of 80 miles an hour were held insufficient to make a case of recklessness for the jury. While it would seem that there would be some rate of speed which in itself alone would show recklessness, yet if there is, it is some speed beyond 80 miles an hour.

For a while it was thought by those having to do with guest litigation that if the occupants of the car protested at the driving that a strong showing was made for the submission of the issue of recklessness to the jury, and that an almost certain case was made for the jury if the driver made such response to such protests as to indicate indifference or flippancy. However, that such is not the law was settled by the Iowa Court in the case of Mayer v. Sheetz, 1937, 223 Iowa 582, 273 N.W. 138, 140. In that case, one of the occupants of the car implored the driver, "For God's sake don't go so fast," and in response thereto the driver shook his shoulders and chuckled. The Iowa Court, in that case, nevertheless, held that a verdict was properly directed for the defendant, saying, on page 587 of 223 Iowa, on page 140 of 273 N.W.:

"Plaintiff's case depended on establishing that decedent actually did operate the car in a manner that was reckless."

In the case of Mescher v. Brogan, 1937, 223 Iowa 573, 272 N.W. 645, where the driver responded to protests of his guests with a remark indicating indifference and where recovery was allowed, the Court, on page 581 of 223 Iowa, on page 650 of 272 N.W., states:

"We do not wish to be understood as laying any great stress upon the remark made by the defendant. This in itself had nothing to do with the inevitable result which followed the method of operating his car. The accident would have taken place at the rate of speed he was traveling if there had not been a word said by anyone. In other words the consequences were neither added to, nor detracted from, by this statement or by his mental attitude. It is the actions and conduct, and not the mental attitude of the actor, that measure the degree of care and determine whether or not one is proceeding without heed of, or concern for, consequences, and with a heedless disregard for, or indifference to, the rights of others."

Probably in a great many cases where car trips are taken with members of the family or with friends, criticism is made by the occupants of the driving and suggestions are made as to it. Frequently instead of such admonitions and suggestions being welcomed by the driver, they are not appreciated and are met with some rejoinder indicating irritation. It seems that in Iowa the disregard of admonitions and suggestions made to a driver by those riding with him does not ipso facto change him into a reckless driver under the Guest Statute.

In the instant case, it is believed that the rejoinder made by James Turner to admonitions as to speed neither added to nor subtracted from the consequences, and that his conduct should be measured by what he did. In the instant case what the defendant, James Turner, did was to reduce the speed of the car following protests.

In some cases like Siesseger v. Puth, 1933, 216 Iowa 916, 248 N.W. 352, there is present the element of the swerving of the car, indicating lack of control. However, such swerving is not essential to recovery. Mescher v. Brogan, supra. In the instant case, the swerving had ceased some hundred feet from the intersection and the car was pursuing a straight course, and that the danger of the car going off the side of the road out of control had ceased before reaching the intersection.

It is the view of some who have to do with this type of litigation that there has been some swerving back and forth by the Iowa Supreme Court in its holdings as to the sufficiency or insufficiency of the evidence in regard to a directed verdict, and that some of its decisions, especially some of the more recent ones (like Long v. Pearce, supra) holding the evidence insufficient to justify submission to a jury, are inconsistent with some of the prior cases holding that the evidence was sufficient to justify submission to a jury. However, since in each particular case the sufficiency of the evidence is determined by the facts and circumstances in that case, since the facts in no two cases are the same, it is believed that the cases are not irreconcilable. It would seem that in each case

the Iowa Supreme Court determines whether the facts and circumstances are such as to support a finding that the driver has actual conscious knowledge of imminent and real danger or peril and then pays no heed whatsoever. In determining whether a driver has actual conscious knowledge of the danger or should be charged with such knowledge, the Iowa Court has suggested that the test is whether the danger is so obvious and imminent that it is a probability as contrasted with being a possibility. In the recent case of Roberts v. Koons, 1941, 230 Iowa 92, on page 97, 296 N.W. 811, on page 814, the Iowa Court states that there is a distinction between "known or visible or probable (as distinguished from possible) danger."

Some of the cases most generally relied upon by plaintiffs in guest cases are the cases of Cerny v. Secor, 1931, 211 Iowa 1232, 234 N.W. 193; Hart v. Hinkley, 1933, 215 Iowa 915, 247 N.W. 258; Siesseger v. Puth, 1933, 216 Iowa 916, 248 N.W. 352; Mescher v. Brogan, 1937, 223 Iowa 573, 272 N.W. 645; Wright v. Mahaffa, 1936, 222 Iowa 872, 270 N.W. 402; Crowell v. Demo, 1941, 231 Iowa 228, 1 N.W.2d 93; Claussen v. Estate of Johnson, 1938, 224 Iowa 990, 278 N.W. 297. In the case of Cerny v. Secor, supra, it was held that the case was properly submitted to the jury where the jury could have found that the driver was going at a "terrific speed" around curves and through dangerous surroundings on a heavily traveled road. In the case of Hart v. Hinkley, 1933, 215 Iowa 915, 247 N.W. 258, it was held that the case was properly submitted to the jury where the driver was going 70 miles per hour at night on a road approaching a bridge on a road with which he was familiar, where the road took an abrupt turn to the right and then to the left. In the case of Wright v. Mahaffa, 1936, 222 Iowa 872, 270 N.W. 402, it was held that the case was properly submitted to the jury where the driver was going 75 miles per hour with the car out of control without slackening speed after it got out of control and ran off the ditch at the side of a straight road. In the case of Mescher v. Brogan, 1937, 223 Iowa 573, 272 N.W. 645, recovery was permitted where it appeared that the driver despite vigorous warning from the guests continued to increase his speed on an unfamiliar graveled highway at night until he could not negotiate curves or turns in the highway. The Iowa Court said in that case, on page 579

of the Iowa citation, on pages 648, 649 of 272 N.W., that curves or turns in a road were probabilities and not merely possibilities. In the case of Crowell v. Demo, 1941, 231 Iowa 228, 1 N.W.2d 93, recovery was permitted where the driver was going 75 to 80 miles an hour, and who after having his attention called to a tree fallen in the highway some distance away, made no effort to reduce the speed until the car was almost upon it. In the case of Claussen v. Estate of Johnson, 1938, 224 Iowa 990, 278 N.W. 297, recovery was permitted where the driver was going 80 to 90 miles an hour at dusk on heavy traveled pavement and passing cars against heavy traffic on the other half of the road and had collision in that other half. It is believed that in all of the cases just referred to the conditions were such that injury to the guest or guests was an almost certain probability and not a mere possibility, and the driver with conscious knowledge of such situation did not exercise even the slightest care to avoid such injury.

In the case of Crowell v. Demo, supra, there was involved the matter of a tree being blown into the road. While ordinarily the blowing of a tree into the road would seem to be that of a possibility rather than a probability, yet in that case the driver's attention was called to the tree and he did nothing to avoid the danger. When the driver's attention was called to the tree some distance ahead, the tree ceased being a possibility and became a probability of which the driver had conscious knowledge. It is believed that warnings by occupants of car may in a proper case change the situation from that of a possibility of danger into a probability of danger so far as the driver is concerned. It is believed that if in the instant case, one of the occupants of the car had seen the end of the road a distance away and had called the attention of James Turner to it and then James Turner did nothing to avoid the danger, the situation would have been somewhat similar to that in Crowell v. Demo, supra. If James Turner had driven over the road sufficient number of times to have been familiar with it and then proceeded as he did in this case, the situation would have been similar to that in Hart v. Hinkley, supra, where the driver was familiar with the road and then drove at a high rate of speed towards a bridge where there was an abrupt turn to the right and then to the left.

The cases most generally relied upon by defendants in guest cases are the cases of Brown v. Martin, 1933, 216 Iowa 1272, 248 N.W. 368; Wion v. Hayes, 1935, 220 Iowa 156, 261 N.W. 531; Scott v. Hansen, 1940, 228 Iowa 37, 289 N.W. 710; McDonald v. Dodge, 1941, 231 Iowa 325, 1 N.W.2d 280; Long v. Pearce, Iowa 1943, 10 N.W.2d 50. The defendants in the instant case rely specifically on two other cases which will be referred to later.

In the case of Brown v. Martin, supra, a driver in broad daylight was driving on a road which was paved until it reached somewhat rough and rutty graveled road of recent construction. Four hundred feet from the end of the pavement there was a sign which read "Pavement Ends." Between that sign and the end of the pavement there was another sign which read "Road under Construction; Road kept open for your convenience; Drive Carefully." The construction of the road had in fact been finished and was covered with a coating of new gravel. The driver drove past the signs without any indicated diminution of speed. Shortly after entering upon the new gravel the car began to swerve and about 150 feet from the end of the paving, turned over two or three times. While a number of witnesses for the plaintiff in that case testified as to the new road being rough and rutty, only one witness for the plaintiff testified that such condition could be seen for any distance. The Iowa Supreme Court held that the trial Court was in error in submitting the case to the jury. The Iowa Court in that case on page 1281 of 216 Iowa, on page 372 of 248 N.W., in discussing the driver's chargeability with knowledge of the danger, states:

"Unless he did see it, or unless the signs which he passed were sufficient to apprise him of a dangerous condition there, it is difficult to see how he can be said to have proceeded without heed or concern for consequences or to have manifested a heedless disregard for or indifference to the rights of others."

In the case of Wion v. Hayes, supra, the driver despite protests of the guest was driving between 60 and 70 miles an hour on a dirt road at night. On the road there was a culvert under construction which was indicated by barricades and piles of dirt, but there were no flares or other signs. The piles of dirt were visible under car lights 350 to 400 feet away. The driver was unable to stop the car in time to avoid the barricade and went off the road. The Iowa Supreme Court held that the trial Court properly directed a verdict for the defendant. The Iowa Court held that the leaving of a culvert under construction under the circumstances was a possibility that the driver did not need to anticipate. In the case of Scott v. Hansen, supra, the defendant was driving 80 miles an hour in the day time towards a place where cattle were being driven across the road. The cattle could be seen about six-tenths of a mile away. The defendant applied his brakes 354 feet away from the cattle, but was unable to avoid hitting a cow sideways and fracturing the guest's arm in so doing. The Iowa Court held the trial Court was in error in not directing a verdict for the defendant. The Iowa Court said while the defendant might have applied his brakes sooner, yet it was a case of poor judgment rather than recklessness. While the case is direct authority for the proposition that a speed of 80 miles an hour does not of itself constitute recklessness, it would seem to also be authority for the proposition that cattle being driven across a highway are a possibility rather than a probability so far as a driver of a car is concerned. In the case of McDonald v. Dodge, supra, the driver was driving 80 miles an hour when a loose wheel coming from a car driven in the opposite direction caused the driver to lose control of the car. The Iowa Court held that a verdict was properly directed for the defendant. The Iowa Court, on page 331 of 231 Iowa, on page 284 of 1 N. W.2d, says:

"It may be conceded that 80 miles per hour is an excessive speed, although we are not prepared to say that it alone would amount to recklessness."

In the very recent case of Long v. Pearce, Iowa 1943, 10 N.W.2d 50, a car going 50 miles per hour at night on a city street ran into the side of a railroad train moving across the street. The whistle of the train was blowing and the headlights of the train lighted up the right of way. The driver was a resident of the community. The Iowa Court held the trial Court was in error in not directing a verdict for the defendant. The Iowa Court in its opinion stated that the only evidence as to knowledge of the train on the part of any one in the car, was that of one of the occupants who testified as to seeing the wheels of the train just before the automobile hit it.

While one case involving the guest statute is now pending on appeal before the Iowa Supreme Court, and there may possibly be more, yet up to now the case of Long v. Pearce, supra, decided June 15, 1943, and the case of Tomasek v. Lynch, supra, decided June 15, 1943, are the last cases in which the Iowa Supreme Court has construed the guest statute. Under well established rules of law this Court must follow the most recent pronouncement of the Iowa Court. For that reason, the facts in the case of Long v. Pearce, supra, should be compared with the facts in the instant case. In the case of Long v. Pearce, supra, there was involved a railroad track which was a permanent part of the city street. Anyone would know that a railroad track across a street would be used by trains from time to time. The Iowa rule in general is that a railroad crossing is a known place of danger. Landis v. Interurban Ry. Co., 166 Iowa 20, 147 N.W. 318, 324; Sohl v. Chicago, R. I. & P. R. Co., 183 Iowa 616, 617, 167 N.W. 529. The Iowa rule in general is that the presence of a train on a crossing is sufficient warning of its presence without any other signals or warnings. Smith v. Chicago, B. & Q. R. Co., 1940, 227 Iowa 1404, 291 N.W. 417, 422. In the case of Long v. Pearce, supra, it was held that there was not sufficient evidence of recklessness to justify submission of the case to the jury, when the driver was going 50 miles an hour at night over a city street, ran into the side of a whistling and moving train without having made any observation or having seen the train at all. In the instant case James Turner drove over the end of a road in which there were no signs or warnings of danger except such warning as the driver might be able to get by being able to see portions of the top of two fence posts at night and being able to see that an open pasture which was several feet below the grade of the north and south road, was not a continuation of the east road. In the case of Long v. Pearce, supra, the driver was keeping no lookout whatsoever and did not see the train at all, while in the instant case James Turner did see the end of the road slightly more than 36 feet away.

If the case of Long v. Pearce, supra, is to be dealt with on the question of possibilities and probabilities, it would have to be considered as a holding that the matter of a train crossing the highway at the same time that a car using the highway arrives at the crossing, is a possibility and not a probability.

Two other cases strongly relied upon by the defendants in the instant case are the cases of Wilde v. Griffel, 1932, 214 Iowa 1177, 243 N.W. 159, and Tomasek v. Lynch, Iowa 1943, 10 N.W.2d 3, as they both had to do with cases where a driver drove off the end of a road ending in a T. In the case of Wilde v. Griffel, supra, the car was being driven at 11:30 o'clock P.M. on a graveled road. The highway upon which the car was being driven ran north and south and terminated at an east and west road. It is not indicated that there were any signs warning of the ending. The car was being driven at the rate of 30 to 35 miles an hour. The plaintiff, a guest, was seated in the front seat. Both the driver and the guest were looking ahead but the ending of the road was not discovered in time to make the turn and the car ran off the end. It does not appear whether the driver or any of the occupants had any familiarity with the road. The Iowa Court held that the trial Court properly directed a verdict for the defendant. The Iowa Court, on page 1179 of 214 Iowa, page 160 of 243 N. W., states:

"It is undisputed that the occupants of the car did not discover the corner until they were within a short distance of it. It is undisputed that they were within 100 feet or less from the corner when it was discovered, and that the plaintiff's son, Henry Wilde, had no time to warn the driver in order to avoid the accident after becoming aware of the corner. From the point of the discovered danger there is no evidence of what occurred, except that the car failed to make the turn. There is no record evidence that the car was in any way defective or that the lights and the brakes on the automobile were not operating properly, nor is there evidence to prove that the driver did not do everything in his power to avoid the accident."

In the instant case there is no claim that James Turner omitted to do anything he should have done after he discovered the end of the road. In the case of Wilde v. Griffel, supra, while the speed of the car was only 30 to 35 miles, the driver was no more able to make the turn than if he had been going 65 to 75 miles an hour.

In the case of Tomasek v. Lynch, supra, the car was being driven over an unfamiliar graveled county road some time after midnight. The road upon which the car

was traveling ran north and south and terminated at an east and west road. The speed at which the car was traveling does not definitely appear. There was testimony that a mile south of the intersection the car was going 50 miles an hour, however. The Iowa Court in the opinion states that the speed was not excessive. The weather conditions were normal and the road was in good condition, and there was no other traffic to interfere. In the area north of the intersection where the right of way of the north and south road would have been if it had extended north of the intersection was a row of trees, some of which were quite large. Apparently there were no warning signs indicating the ending of the road. The driver of the car discovered the end of the road by his lights shining on the row of trees when he was between 60 to 70 feet south of the east and west highway. The driver applied his brakes but was unable to stop in time to avoid going over the end of the road. Skid marks showed that the tires had skidded for the last 20 feet before going over the embankment. The Court referred to the fact that after the driver discovered the danger he did all he could to save his guests from injury. The Iowa Court held that the trial Court was in error in submitting the case to the jury. It would seem that in some aspects the case of Tomasek v. Lynch, supra, was a stronger case for submission to the jury than the instant case. In the Tomasek case there were large trees indicating the end of the road, while there was nothing similarly striking indicating the end of the road in the instant case.

▆▆▆ From the cases of Wilde v. Griffel, supra, and Tomasek v. Lynch, supra, the Iowa rule appears to be that where the circumstances are such that a driver does not have conscious knowledge that a road ends at a T intersection, that he is not guilty of recklessness in failing to observe the ending in time to avoid a mishap. In neither of these cases did the occupants of the car discover the ending of the road in time to avoid a mishap, and apparently there were no warning signs indicating the ending of the road. What the situation might be if it appeared that the driver was familiar with the road, or there were warning signs or reflectors, or where the driver's attention was called to the situation by an occupant of the car in time for the driver to have avoided the mishap, is not involved in the instant case. Dealing with

the situation from the viewpoint of possibilities and probabilities, it would appear to be the Iowa rule that the sudden ending of a road without warning to one unfamiliar with the road is a possibility and not a probability on the question of whether the driver is acting in conscious disregard of danger.

It is noticeable that in a number of cases where the Iowa Court held that a guest case should not have been submitted to the jury, were cases where the driver was suddenly confronted with an emergency or semi-emergency, like a culvert under construction or a cow in the road. Following that viewpoint it could be regarded that the sudden ending of a road without warning is an emergency or semi-emergency.

Under the rule established by the Iowa Court in the case of Peter v. Thomas, supra, before the instant case could be submitted to the jury, there would have to be sufficient evidence justifying an instruction which would in substance read as follows:

"James Turner cannot be deemed guilty of recklessness unless it is shown that the danger and peril, if there was such, was obvious and apparent and was known, and that he acted in entire disregard of the existing danger, and proceeded without heed or concern for the consequences."

▆▆▆ Construing the evidence most favorably for the plaintiff, it is believed that there is no evidence in the case that would justify such an instruction.

▆▆▆ There is another phase of this case, and that is the question of proximate cause. If in the instant case, James Turner had gone off the end of the road while going at the rate of 30 to 35 miles an hour, under the case of Wilde v. Griffel, supra, he would not have been guilty of recklessness. If James Turner would have driven off the end of the road driving at a fairly moderate rate of speed, then his driving at a higher rate of speed would seem not to be the proximate cause of the mishap. In the case of Tomasek v. Lynch, supra, it was held that a speed was not excessive which did not permit stopping within 60 to 70 feet.

The statements of James Turner that he was going too fast do not require the submission of the case to the jury. That he was driving too fast can be conceded without thereby conceding recklessness, which is something more than just driving too fast.

It is believed that under the decisions of the Iowa Supreme Court that the plaintiff's evidence is not sufficient to justify the submission of this case to the jury.